### AIMEE L. DUTKIEWICZ *v.* THOMAS M. DUTKIEWICZ
### (SC 18082)

Rogers, C. J., and Katz, Vertefeuille, Zarella and Schaller, Js.

---

[4] See *Socha* v. *Bordeau*, 277 Conn. 579, 587, 893 A.2d 422 (2006).

Argued March 18—officially released October 28, 2008

*Thomas M. Dutkiewicz*, pro se, the appellant (defendant).

*Aimee L. Dutkiewicz*, pro se, the appellee (plaintiff).

*Opinion*

SCHALLER, J. In this action for the dissolution of a marriage, the pro se defendant, Thomas M. Dutkiewicz,

appeals[1] from the trial court's order that the defendant attend a parenting education program, as authorized by General Statutes § 46b-69b[2] and Practice Book § 25-

[1] The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c).

[2] General Statutes § 46b-69b provides in relevant part: "(a) The Judicial Department shall establish a parenting education program for parties involved in any action before the Superior Court under section 46b-1, except actions brought under section 46b-15 and chapter 815t. For the purposes of this section, 'parenting education program' means a course designed by the Judicial Department to educate persons, including unmarried parents, on the impact on children of the restructuring of families. The course shall include, but not be limited to, information on the developmental stages of children, adjustment of children to parental separation, dispute resolution and conflict management, guidelines for visitation, stress reduction in children and cooperative parenting.

"(b) The court shall order any party to an action specified in subsection (a) of this section to participate in such program whenever a minor child is involved in such action unless (1) the parties agree, subject to the approval of the court, not to participate in such program, (2) the court, on motion, determines that participation is not deemed necessary, or (3) the parties select and participate in a comparable parenting education program. A family support magistrate may order parties involved in any action before the Family Support Magistrate Division to participate in such parenting education program, upon a finding that such participation is necessary and provided both parties are present when such order is issued. No party shall be required to participate in such program more than once. A party shall be deemed to have satisfactorily completed such program upon certification by the service provider of the program.

"(c) The Judicial Department shall, by contract with service providers, make available the parenting education program and shall certify to the court the results of each party's participation in the program.

"(d) Any person who is ordered to participate in a parenting education program shall pay directly to the service provider a participation fee, except that no person may be excluded from such program for inability to pay such fee. Any contract entered into between the Judicial Department and the service provider pursuant to subsection (c) of this section shall include a fee schedule and provisions requiring service providers to allow persons who are indigent or unable to pay to participate in such program and shall provide that all costs of such program shall be covered by the revenue generated from participants' fees. The total cost for such program shall not exceed two hundred dollars per person. Such amount shall be indexed annually to reflect the rate of inflation. The program shall not exceed a total of ten hours. . . ."

5 (a) (6).[3] The defendant claims that § 46b-69b is an unconstitutional infringement on a parent's fundamental right to exercise care, control and custody over his or her child. We disagree and affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the present appeal. On November 21, 2006, the plaintiff, Aimee L. Dutkiewicz, served the defendant with a complaint seeking the dissolution of their marriage. Pursuant to Practice Book § 25-5 (a) (6), this filing triggered an automatic order requiring the parties to attend a parenting education program, designed by the judicial branch, as authorized by § 46b-69b, within sixty days of the return day, which was set for December 5, 2006. On December 7, 2006, the defendant, pursuant to § 46b-69b (b), filed a motion for exemption from the parenting program on the ground that it is unconstitutional to require a parent to attend such a program.[4] On February 6, 2007, the trial court issued a memorandum of decision in which it upheld the constitutionality of § 46b-69b and denied the defendant's motion. The trial court concluded that § 46b-69b is narrowly tailored to serve a compelling state interest,

_____

[3] Practice Book § 25-5 (a) provides in relevant part: "The following automatic orders shall apply to both parties, with service of the automatic orders to be made with service of process of a complaint for dissolution of marriage or civil union, legal separation, or annulment, or of an application for custody or visitation. An automatic order shall not apply if there is a prior, contradictory order of a judicial authority. The automatic orders shall be effective with regard to the plaintiff or the applicant upon the signing of the complaint or the application and with regard to the defendant or the respondent upon service and shall remain in place during the pendency of the action, unless terminated, modified, or amended by further order of a judicial authority upon motion of either of the parties . . . .

"(6) The parties, if they share a minor child or children, shall participate in the parenting education program within sixty days of the return day or within sixty days from the filing of the application. . . ."

[4] The plaintiff, also proceeding pro se, did not oppose the defendant's motion, and, in the present appeal, she concurs with the defendant's position with regard to the unconstitutionality of § 46b-69b.

because it applies only to parents with minor children who are parties to one of four specified family law actions; see Practice Book § 25-5 (a); and has as its purpose maintaining familial harmony through a difficult transition. This appeal followed.[5]

I

At the outset, because the trial court, pursuant to § 46b-69b (b) (1), approved the parties' agreement not to participate in the parenting education program; see footnote 5 of this opinion; we first must address whether the present appeal is moot.[6] "Mootness implicates [this] court's subject matter jurisdiction and is thus a threshold matter for us to resolve. . . . It is a well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . An actual controversy must exist not only at the time the appeal is taken, but also throughout the pendency of the appeal. . . . When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot." (Internal quotation marks omitted.) *Segal* v. *Segal*, 264 Conn. 498, 505, 823 A.2d 1208 (2003); *Giaimo* v. *New Haven*, 257 Conn. 481, 492–93, 778 A.2d 33 (2001). In the present action, because the trial court ultimately waived the defendant's participation in the parenting education program,

---

[5] The defendant filed this appeal on February 23, 2007. Subsequently, on March 27, 2007, the trial court rendered judgment dissolving the parties' marriage. In that judgment, the trial court also waived their participation in the parenting education program pursuant to § 46b-69b (b) (1), which allows parties to agree, subject to the court's approval, not to participate in the parenting education program.

[6] Neither pro se party raised this issue on appeal. We address it sua sponte.

we cannot grant the defendant any practical relief. Accordingly, unless the defendant's claim falls under an exception to the mootness doctrine, the claim is moot.

The mootness doctrine does not preclude a court from addressing an issue that is " 'capable of repetition, yet evading review.' " *Loisel* v. *Rowe*, 233 Conn. 370, 378, 660 A.2d 323 (1995). "[F]or an otherwise moot question to qualify for review under the capable of repetition, yet evading review exception, it must meet three requirements. First, the challenged action, or the effect of the challenged action, by its very nature must be of a limited duration so that there is a strong likelihood that the substantial majority of cases raising a question about its validity will become moot before appellate litigation can be concluded. Second, there must be a reasonable likelihood that the question presented in the pending case will arise again in the future, and that it will affect either the same complaining party or a reasonably identifiable group for whom that party can be said to act as surrogate. Third, the question must have some public importance. Unless all three requirements are met, the appeal must be dismissed as moot." (Internal quotation marks omitted.) Id., 382–83. We discuss these three requirements in turn.

The first requirement is that the challenged action "must be of a limited duration so that there is a strong likelihood that the substantial majority of cases raising a question about its validity will become moot before appellate litigation can be concluded." Id., 382. As we stated in *Loisel*, a party typically satisfies this prong if there exists a "functionally insurmountable time [constraint]." Id., 383. The statutory structure of the parenting education requirement establishes such a time constraint. Practice Book § 25-5 (a) (6) requires parents to attend the parenting education program within sixty days of the return day. Given this requirement, there is a strong likelihood that few, if any, appellate claims

challenging the validity of § 46b-69b could be resolved within the sixty day period. The present appeal illustrates this principle. The plaintiff initiated the present action by serving the defendant on November 21, 2006, automatically triggering the sixty day period, measured from the return date of December 5, 2006, within which the parties had to comply with the parenting education requirement set forth in § 46b-69b. See Practice Book § 25-5 (a). Service of the complaint on the defendant simultaneously triggered a ninety day waiting period, also measured from the return date, required by General Statutes § 46b-67 (a).[7] Under § 46b-67 (a), the trial court cannot even *hear* the case until after the ninety day period expires, which is thirty days after the expiration of the sixty day period set by § 46b-69b for compliance with the parenting education program. See Practice Book § 25-5 (a). Even assuming that the trial court rendered a judgment of dissolution immediately upon hearing the case, and that one of the parties immediately appealed from the § 46b-69b automatic order, the time for compliance with that order already would have passed, and the trial court either would have waived the requirement or not. In either scenario, the issue would evade review because it would have been rendered moot. That is precisely what happened in the present case. As measured from the return date of December 5, 2006, the parties had sixty days within which to comply with the automatic order—by February 5, 2007. The court did not render a judgment of final dissolution until March 27, 2007, a few weeks after the § 46b-67 ninety day waiting period had expired. Prior to rendering the judgment of dissolution, the court had denied the defendant's motion for exemption from

---

[7] General Statutes § 46b-67 (a) provides in relevant part: "Following the expiration of ninety days after the day on which a complaint for dissolution or legal separation is made returnable, or after the expiration of six months, where proceedings have been stayed under section 46b-53, the court may proceed on the complaint . . . ."

the parenting education requirement. At the time of the judgment, however, the court waived the requirement because the parties had agreed not to participate in the program. By the time the defendant filed this appeal, the time period for compliance with the parenting education requirement already had passed.[8]

"Second, there must be a reasonable likelihood that the question presented in the pending case will arise again in the future, and that it will affect either the same complaining party or a reasonably identifiable group for whom that party can be said to act as surrogate." *Loisel* v. *Rowe*, supra, 233 Conn. 382. "This analysis entails two separate inquiries: (1) whether the question presented will recur at all; and (2) whether the interests of the people likely to be affected by the question presented are adequately represented in the current litigation." Id., 384. With respect to the first question, it is clear that the issue is likely to recur because Practice Book § 25-5 (a) (6) specifies that an automatic order requiring participation in the parenting education program, as authorized by § 46b-69b, will be issued for any parent with minor children, in an action for dissolution of a marriage or civil union, legal separation, annulment, or application for custody or visitation. With respect to the second question, because § 46b-69b (b) provides that "[n]o party shall be required to participate in such program more than once," the requirement cannot affect the same complaining party. Accordingly, we must determine whether the defendant

[8] Although the defendant filed this appeal before the dissolution judgment had been rendered, we believe that the appeal is properly before this court under the line of cases allowing for an immediate appeal of interlocutory orders implicating significant parental rights that cannot be vindicated in a later appeal from the dissolution judgment. See, e.g., *Sweeney* v. *Sweeney*, 271 Conn. 193, 207, 856 A.2d 997 (2004) (pendente lite order relating to religious and educational upbringing of minor children); *Madigan* v. *Madigan*, 224 Conn. 749, 755–58, 620 A.2d 1276 (1993) (temporary orders relating to physical custody of children).

can act as a surrogate for a reasonably identifiable group. The surrogate requirement is necessary to ensure that "judicial decisions which may affect the rights of others are forged in hot controversy, with each side fairly and vigorously represented." (Internal quotation marks omitted.) *Loisel* v. *Rowe*, supra, 385. "This premise, however, does not mandate a strict rule that the identical party must be likely to be affected in the future. See, e.g., *Goodson* v. *State*, [228 Conn. 106, 115, 635 A.2d 285 (1993), after remand, 232 Conn. 175, 653 A.2d 157 (1995)] (noting that [n]o one factor [including the same person factor] is controlling)." (Internal quotation marks omitted.) *Loisel* v. *Rowe*, supra, 385. "There is, nonetheless, a need for some nexus between the litigating party and those people who may be affected by the court's ruling in the future. It is this nexus that the 'surrogacy' concept addresses." Id., 386. Ultimately, whether a party is an appropriate surrogate must be determined on a case-by-case basis. Id., 387. On the present record, there is nothing to indicate that the defendant cannot serve as an adequate surrogate for other parents with minor children who are subject to the automatic order. See id. (noting that plaintiff certainly would qualify as surrogate for other general assistance recipients). Although we are careful to observe that both parties are proceeding pro se, we note both our lenient rules with respect to pro se parties and also that, at this point in our jurisprudence, we have not established a minimum requirement for adequacy of representation within the surrogacy analysis.

Third, the claim must have some public importance. "The requirement of public importance is largely self-explanatory." Id. "Consideration of the importance of the issue represents a sound means for distinguishing those cases that should be reviewed and those that should not." Id. In *Roth* v. *Weston*, 259 Conn. 202, 216, 789 A.2d 431 (2002), we recognized that "parents' inter-

est in the care, custody and control of their children, [i]s 'perhaps the oldest of the fundamental liberty interests recognized by [the Supreme] Court.' *Troxel* v. *Granville*, [530 U.S. 57, 65, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000)]." As we discuss in part II of this opinion, because the present claim raises the question of whether § 46b-69b infringes on the fundamental right of a parent to raise his or her children free from unnecessary governmental interference, we conclude that the claim raises an issue of public importance.

Because the defendant has satisfied the three-pronged test outlined in *Loisel*, his claim falls under the exception to the mootness doctrine for claims that are capable of repetition but evading review. We turn next to the defendant's substantive claim.

II

The defendant claims that § 46b-69b is facially unconstitutional because it violates his right to substantive due process guaranteed by the fourteenth amendment to the United States constitution.[9] The defendant contends that the statute unconstitutionally infringes on a parent's right to exercise care, custody and control over his or her child because, absent a showing of harm to the child or parental unfitness, the state does not have a compelling interest to issue an automatic order for the parties to attend the parenting education program. The trial court observed that, consistent with United

[9] Although the defendant identified seven issues on appeal, each issue reasonably relates to a single cognizable legal claim—the constitutionality of § 46b-69b under the due process clause of the fourteenth amendment to the United States constitution. Because the defendant claims that the statute infringes on a fundamental right, we construe his claim to raise an issue of substantive, rather than procedural, due process. See *Washington* v. *Glucksberg*, 521 U.S. 702, 721, 117 S. Ct. 2258, 138 L. Ed. 2d 772 (1997) (United States Supreme Court's analysis of substantive due process claims examines whether challenged law implicates fundamental right "deeply rooted in this [n]ation's history and tradition" and "implicit in the concept of ordered liberty" [internal quotation marks omitted]).

States Supreme Court jurisprudence, a parent's interest in making decisions concerning the care, custody and control of his or her child is a fundamental right. The trial court concluded, however, that "[o]n its face, the language of the statute fails to implicate the care, custody or control that a parent exercises over a child." Despite this conclusion, the trial court nonetheless applied strict scrutiny and held that the statute was constitutional. The trial court concluded that the statute was narrowly tailored, in that it applies only to parents with minor children who are parties to four specified family law actions; see Practice Book § 25-5 (a); and that the statute achieved a compelling state interest by aiming to maintain familial harmony through a difficult transition.

We first note that "[t]he constitutionality of a statute presents a question of law over which our review is plenary. . . . It is well established that a validly enacted statute carries with it a strong presumption of constitutionality, [and that] those who challenge its constitutionality must sustain the heavy burden of proving its unconstitutionality beyond a reasonable doubt. . . . The court will indulge in every presumption in favor of the statute's constitutionality . . . . Therefore, [w]hen a question of constitutionality is raised, courts must approach it with caution, examine it with care, and sustain the legislation unless its invalidity is clear." (Citation omitted; internal quotation marks omitted.) *State* v. *McKenzie-Adams*, 281 Conn. 486, 500, 915 A.2d 822, cert. denied, 552 U.S. 888, 128 S. Ct. 248, 169 L. Ed. 2d 148 (2007).

At the outset, we must determine the level of scrutiny that applies to the defendant's constitutional claim. We agree that a parent's interest in the care, custody and control over his or her child is a fundamental right. In *Troxel* v. *Granville*, supra, 530 U.S. 66, the United States Supreme Court stated that "[i]n light of [its] extensive

precedent, it cannot now be doubted that the [d]ue [p]rocess [c]lause of the [f]ourteenth [a]mendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." See also *Roth* v. *Weston*, supra, 259 Conn. 218 (stating that "consistent with the [United States Supreme] [C]ourt's determination that a parent's interest in the care, custody and control over his or her children is perhaps one of the oldest of the fundamental liberty interests recognized by [the] [c]ourt . . . the application of the strict scrutiny test is required to any *infringement* it may suffer" [citations omitted; emphasis added; internal quotation marks omitted]). If § 46b-69b *infringes* on a parent's fundamental right to exercise care, custody and control over his or her child, we must apply strict scrutiny. We conclude, however, that § 46b-69b does not infringe on this right.

It is necessary to describe the contours of this fundamental right. In *Roth* v. *Weston*, supra, 259 Conn. 228–29, we relied on United States Supreme Court precedent to conclude that government interference with a parent's right to raise his or her child is justified only when it can be demonstrated that there is a compelling need to protect the child from harm. Because the defendant in this case has advanced his claim solely on the basis of the federal constitution, we look to federal law. The United States Supreme Court's case law discussing the fundamental right of a parent to make decisions concerning the care, custody and control of his or her children has focused on whether the government has interfered with the parent's exercise of that decision making. For example, in one of the earlier, and certainly one of the most influential cases on this issue, *Pierce* v. *Society of Sisters*, 268 U.S. 510, 530, 536, 45 S. Ct. 571, 69 L. Ed. 1070 (1925), the court struck down an Oregon compulsory education law that required children ages eight to sixteen to attend public school. In

affirming the parents' right to send their children to private school, the court stated that the law "unreasonably interferes with the liberty of parents and guardians to direct the upbringing and education of children under their control. . . . The fundamental theory of liberty upon which all governments in this [u]nion repose excludes any general power of the [s]tate to standardize its children by forcing them to accept instruction from public teachers only." Id., 534–35. In other words, the court concluded that the state did not have the power to make the decision whether children should attend public or private school; the fundamental right to make that decision rested with the parents. Id. The court observed that a decision to send a child to private school, as opposed to public school, was "not inherently harmful . . . ." Id., 534.

In *Pierce* v. *Society of Sisters*, supra, 268 U.S. 534, the court relied in part on its decision in *Meyer* v. *Nebraska*, 262 U.S. 390, 397, 403, 43 S. Ct. 625, 67 L. Ed. 1042 (1923), in which it held unconstitutional a Nebraska law that forbade foreign language instruction in any school until the pupil had attained and successfully passed the eighth grade. Under that law, even if a parent wanted his or her pre-eighth grade child to learn French, German, Italian or Spanish, the state prohibited such instruction. Id., 401. The court held that the legislature, in enacting the prohibition, "[had] attempted materially to interfere . . . with the power of parents to control the education of their own." Id. The court noted that "proficiency in foreign language . . . is not injurious to the health, morals or understanding of the ordinary child." Id., 403. The court characterized the prohibition as an attempt on the part of the state to "foster a homogeneous people"; id., 402; and compared the law to the proposal of Plato in The Republic, to separate children from their parents at birth, and entrust the rearing and education of the chil-

dren to persons in his envisioned utopian society whose sole job and particular expertise was to provide such services. Id., 401–402; Plato, Republic of Plato (Benjamin Jowett trans., Oxford University Press 3d Ed. 1888) Book V, p. 150.

More recently, in *Wisconsin* v. *Yoder*, 406 U.S. 205, 207, 92 S. Ct. 1526, 32 L. Ed. 2d 15 (1972), Amish parents challenged the constitutionality of a Wisconsin compulsory school attendance statute that required children to attend public or private school up to age sixteen. In that case, the parents had sought to remove their children from schooling at the ages of fourteen and fifteen, so that the children could focus more intently on their faith and be free from the dangers that modern society presented to the Amish lifestyle. Id., 207 n.1, 209. The state prosecuted and convicted the parents for violation of the statute. Id., 208. In holding the statute unconstitutional, the court noted that the case implicated "the fundamental interest of parents, as contrasted with that of the [s]tate, to guide the religious future and education of their children." Id., 232. The court concluded that the fundamental right may be infringed only "if it appears that parental decisions will jeopardize the health or safety of the child, or have a potential for significant social burdens." Id., 233–34. The court concluded that the Amish children would not be harmed by receiving an Amish education. Id., 230, 234.

In *Troxel* v. *Granville*, supra, 530 U.S. 60–61, a mother challenged the constitutionality of a Washington visitation statute after the paternal grandparents of her children sought additional visitation after the death of their son. The statute in that case stated that "[a]ny person may petition the court for visitation rights at any time including, but not limited to, custody proceedings. The court may order visitation rights for any person when visitation may serve the best interest of the child whether or not there has been any change of circum-

stances." (Internal quotation marks omitted.) Id., 61; Wash. Rev. Code § 26.10.160 (3) (1994). "Pursuant to § 26.10.160 (3), the trial court awarded the grandparents more visitation than the mother desired. *Troxel* v. *Granville*, supra, 61. In striking down the statute as unconstitutional, the court concluded that "the [d]ue [p]rocess [c]lause does not permit a [s]tate to infringe on the fundamental right of parents to make child rearing decisions simply because a state judge believes a 'better' decision could be made." Id., 72–73. Under the facts presented, the court was reluctant to uphold the statute as constitutional as applied, absent a showing of parental unfitness. Id., 68. The court characterized the trial court's decision thusly: "[T]his case involves nothing more than a simple disagreement between the Washington Superior Court and [the mother] concerning her children's best interests." Id., 72. Put another way, the trial court impermissibly substituted its own decision regarding the best interest of the children in place of the mother's decision, thus infringing on her fundamental right to make decisions concerning the care, custody and control of her children.

Finally, we look to our decision in *Roth* v. *Weston*, supra, 259 Conn. 202, which, like the present case, applied federal constitutional law.[10] The factual background in *Roth* was similar to the background in *Troxel*. In *Roth*, this court considered the constitutionality of General Statutes § 46b-59, which allowed a court to "grant right of visitation to any person . . . ." (Internal quotation marks omitted.) Id., 204 n.1. In light of the United States Supreme Court's decision in *Troxel*, we concluded that § 46b-59 was unconstitutional as applied

---

[10] The defendant in *Roth* also claimed that General Statutes § 46b-59, pertaining to visitation rights, violated the state constitution. *Roth* v. *Weston*, supra, 259 Conn. 204. Because the defendant did not include a separate and distinct analysis of his state constitutional claim, we did not consider it. Id., 210 n.6.

to the facts of *Roth*, "to the extent that the trial court, pursuant to the statute, permitted third party visitation contrary to the desires of a fit parent and in the absence of any allegation and proof by clear and convincing evidence that the children would suffer actual, significant harm if deprived of the visitation." Id., 205–206. We concluded that the statute implicated the fundamental right of parents "to make decisions regarding [the child's] care, control, education, health, religion and association." Id., 216–17. We agreed, however, with Justice Kennedy's caution in his dissent in *Troxel*, that courts "must use considerable restraint, including careful adherence to the incremental instruction given by the precise facts of particular cases, as they seek to give further and more precise definition to the right." (Internal quotation marks omitted.) Id., 214, quoting *Troxel* v. *Granville*, supra, 530 U.S. 95–96 (Kennedy, J., dissenting). In *Roth*, we referred to *Lassiter* v. *Dept. of Social Services*, 452 U.S. 18, 27, 101 S. Ct. 2153, 68 L. Ed. 2d 640 (1981), to explain the nature of the right: "The family entity is the core foundation of modern civilization. The constitutionally protected interest of parents *to raise their children without interference* undeniably warrants deference and, absent a powerful countervailing interest, protection of the greatest possible magnitude." (Emphasis added.) *Roth* v. *Weston*, supra, 228. In other words, we stated, the fundamental right of a parent to make decisions concerning the care, custody and control of his or her children protects against "unwarranted intrusion[s] into family autonomy." Id., 229.

From the foregoing discussion, it is apparent that the question of whether the parental right to exercise care, custody and control over children is infringed must be determined on a case-by-case basis. Id., 214, citing *Troxel* v. *Granville*, supra, 530 U.S. 95–96 (Kennedy, J., dissenting). On the other hand, although the applicable

case law indicates that it is sometimes difficult to determine exactly when the state oversteps its bounds and infringes on a parent's fundamental right to raise his or her children; see *Troxel* v. *Granville*, supra, 96; the contours of the right are not completely amorphous. All of the cases in which the United States Supreme Court or this court, in applying federal constitutional standards, have concluded that the parental right to exercise care, custody and control over children was implicated, involved situations in which the state intervened and substituted its decision making for that of the parents. The result is that a parent's *decision* with respect to the care, custody and control of his or her child cannot be overridden by the state in the absence of a showing that the parent is unfit or that the parent's decision will jeopardize the health or safety of the child, or will have a potential to impose significant social burdens. See, e.g., *Wisconsin* v. *Yoder*, supra, 406 U.S. 233–34; *Roth* v. *Weston*, supra, 259 Conn. 228–29. It is axiomatic that to infringe on this fundamental right, the state must in some way attempt to override or at least limit[11] the *decision* of a parent with respect to the

---

[11] As we noted in *Roth*, "[t]here are . . . limitations on these parental rights. Some of these limitations arise out of an appreciation of the state's long recognized interests as parens patriae. See *Reno* v. *Flores*, 507 U.S. 292, 303–304, 113 S. Ct. 1439, 123 L. Ed. 2d 1 (1993); *Santosky* v. *Kramer*, 455 U.S. 745, 766, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *Parham* v. *J. R.*, 442 U.S. 584, 605, 99 S. Ct. 2493, 61 L. Ed. 2d 101 (1979); *Prince* v. *Massachusetts*, 321 U.S. 158, 166, 64 S. Ct. 438, 88 L. Ed. 645 (1944); see also General Statutes § 10-204a (requiring parents to immunize children prior to school enrollment); General Statutes §§ 14-100a, 14-272a (requiring child restraint in vehicles); General Statutes § 17a-81 (authorizing emergency medical treatment where parent withholds consent); General Statutes §§ 31-23, 31-24 (restricting child labor from certain occupations or workplaces); General Statutes § 53-21a (prohibiting parents from leaving child unsupervised in public accommodation or vehicle). Furthermore, it is unquestionable that in the face of allegations that parents are unfit, the state may intrude upon a family's integrity. *Parham* v. *J. R.*, supra, 603; see General Statutes § 17a-101g (removal of child where imminent risk of harm); General Statutes §§ 17a-112 (j), 45a-717 (termination of parental rights)." *Roth* v. *Weston*, supra, 259 Conn. 224.

care, custody and control over his or her child. Such is not the case here. In other words, for there to be an infringement of this fundamental right that triggers strict scrutiny, the hand of the state must intrude improperly into the parent's decision-making authority over his or her child. In each of the United States Supreme Court cases, the parent's decision with respect to his or her child was squarely at odds with the state's decision. In *Troxel*, the parent wanted to limit third party visitation, and the state did not; *Troxel* v. *Granville*, supra, 60–61; in *Yoder*, the parents wanted to give their children an Amish education, and the state wanted them to continue to attend public school; *Wisconsin* v. *Yoder*, supra, 207–208; in *Pierce*, the state sought to prevent parents from choosing to send their children to private school; *Pierce* v. *Society of Sisters*, supra, 268 U.S. 530; and in *Meyer*, the state sought to prohibit parents from choosing to instruct their children in a foreign language before the eighth grade. *Meyer* v. *Nebraska*, supra, 262 U.S. 396–97.[12] In the present action there is no such intrusion on the parent's decision-making authority.

A closer examination of the statute's provisions will illuminate this point. Pursuant to § 46b-69b (a), " 'parenting education program' means a course designed by the Judicial Department to *educate* persons, including unmarried parents, on the impact on children of the restructuring of families." (Emphasis added.) Section 46b-69b (a) also provides that "[t]he course shall include, but not be limited to, *information* on the developmental stages of children, adjustment of children to parental separation, dispute resolution and conflict

---

[12] In *Pierce* and *Meyer*, the petitioners were not parents, but a private school and a teacher, respectively. *Pierce* v. *Society of Sisters*, supra, 268 U.S. 535; *Meyer* v. *Nebraska*, supra, 262 U.S. 391. Nonetheless, as discussed in part II of this opinion, the court in those cases relied on the fundamental rights of parents.

management, guidelines for visitation, stress reduction in children and cooperative parenting." (Emphasis added.) It is clear from the text of the statute that the purpose of the course is to educate parents and provide them with information aimed at lessening the adverse impact on children that may result from the restructuring of the family. As the trial court concluded, "[o]n its face, the language of the statute fails to implicate the care, custody or control that a parent exercises over a child." We agree. The course merely provides information to parents regarding the effects of family restructuring on children. Although the legislature intended to provide useful educational material, what parents choose to do with the information is entirely up to them. Parents can choose to apply the skills gleaned from the course or parents can choose the opposite—that is, to ignore the information and to *decline to* use it in their familial interactions. There is no legal requirement for parents to use the information in exercising care, custody and control over their children. Nothing in the statute requires parents to make any decision regarding the care, control and custody of their children in accordance with the state's judgment of what would be in the best interests of the children. Put another way, nothing in the statute requires parents to change the way that they care for their children; nothing in the statute authorizes the state to deprive parents of control or custody of their children. It merely requires parents who are using the court system to effect a significant change in the family unit—one likely to impact both the parents and the children—to attend a parenting education course.[13]

---

[13] We also note that Connecticut is not an outlier in requiring parents who seek a dissolution of their marriage or civil union to attend parenting education courses. Numerous other states have similar statutory requirements. See, e.g., Colo. Rev. Stat. § 14-10-123.7 (2008); Fla. Stat. § 61.21 (2007); Kan. Stat. Ann. § 60-1626 (2007); Minn. Stat. § 518.157 (2006); Mont. Code Ann. § 40-4-226 (2007); W. Va. Code Ann. § 48-9-104 (West 2004); Wis. Stat. Ann. § 767.401 (West Sup. 2007).

Moreover, the education program does not involve the children themselves. There is no requirement that the children attend any of the presentations. The statute does not authorize the providers to enter the home. Nor does the statute authorize the providers to interview or counsel the children. We conclude that § 46b-69b does not infringe on parents' fundamental right to *exercise* care, custody and control over their children.

Because § 46b-69b does not violate a fundamental right, rational basis review applies. See *Washington* v. *Glucksberg*, 521 U.S. 702, 728, 117 S. Ct. 2258, 138 L. Ed. 2d 772 (1997) (applying rational basis review upon concluding that Washington law did not infringe on fundamental right); see also *Campbell* v. *Board of Education*, 193 Conn. 93, 105, 475 A.2d 289 (1984) (applying rational basis test after concluding that school board decision did not infringe on fundamental right to elementary and secondary education under state constitution). Under rational basis review, if the violation of the right can be rationally related to a legitimate government purpose, then the law is held valid. "The court's function . . . is to decide whether the purpose of the legislation is a legitimate one and whether the particular enactment is designed to accomplish that purpose in a fair and reasonable way. If an enactment meets this test, it satisfies the constitutional requirements of due process . . . ." (Internal quotation marks omitted.) *Caldor's, Inc.* v. *Bedding Barn, Inc.*, 177 Conn. 304, 315, 417 A.2d 343 (1979). "In determining whether the challenged classification is rationally related to a legitimate public interest, we are mindful that [t]he test . . . is whether this court can conceive of a rational basis for sustaining the legislation; we need not have evidence that the legislature actually acted upon that basis." (Internal quotation marks omitted.) *Contractor's Supply of Waterbury, LLC* v. *Commissioner of Environmental Protection*, 283 Conn. 86, 93, 925 A.2d 1071

(2007). "Rational basis review is satisfied so long as there is a plausible policy reason for the classification . . . . [I]t is irrelevant whether the conceivable basis for the challenged distinction actually motivated the legislature. . . . To succeed, the party challenging the legislation must negative every conceivable basis which might support it . . . ." (Internal quotation marks omitted.) Id.

We conclude that § 46b-69b is rationally related to a legitimate government purpose, that is, the state's legitimate interest in promoting the welfare of children. See, e.g., *Overton* v. *Bazzetta*, 539 U.S. 126, 133, 123 S. Ct. 2162, 156 L. Ed. 2d 162 (2003) ("[p]rotecting children from harm is . . . a legitimate goal"); *Denver Area Educational Telecommunications Consortium, Inc.* v. *Federal Communications Commission*, 518 U.S. 727, 755, 116 S. Ct. 2374, 135 L. Ed. 2d 888 (1996) (protection of children is compelling interest). Section 46b-69b (a) describes the contents and purpose of the parenting education course, stating that it is "a course designed by the Judicial Department to educate persons, including unmarried parents, on the impact on children of the restructuring of families. The course shall include, but not be limited to, information on the developmental stages of children, adjustment of children to parental separation, dispute resolution and conflict management, guidelines for visitation, stress reduction in children and cooperative parenting." As previously noted in this opinion, the requirement applies in the context of actions for "dissolution of marriage or civil union, legal separation, or annulment, or of an application for custody or visitation." Practice Book § 25-5 (a). These types of legal actions are likely to impact the welfare of children and simultaneously are likely to present parents with extreme emotional or psychological challenges as the family is restructured. Requiring parents who undergo such a significant change in family struc-

ture and dynamics, with potential adverse impact on their children, to attend a parenting education course as provided in § 46b-69b (a), is rationally related to the state's legitimate interest in promoting the welfare of children.

The judgment is affirmed.

In this opinion the other justices concurred.