******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

IN RE EMMA F. ET AL.*
(SC 19417)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald, Espinosa and Robinson, Js.

*Considered December 23, 2014—officially released January 22, 2015***

*Daniel J. Klau*, for the appellant (Connecticut Law Tribune).

*Steven R. Dembo*, for the appellee (respondent mother).

*Dana M. Hrelic*, for the guardian ad litem.

*Opinion*

ROBINSON, J. The Connecticut Law Tribune (news-paper) appeals[1] from the judgment of the trial court permanently enjoining it from publishing the contents of a habeas corpus petition filed in connection with this child protection case concerning the minor children, Emma F., Logan F., and Olivia F., of the respondent mother, Lisa F., and the respondent father, Eric F.[2] In this appeal, the newspaper challenges that injunction as an unconstitutional prior restraint that violates its free speech rights under the first amendment to the United States constitution, and article first, § 4, of the Connecticut constitution. Subsequent to the filing of the present appeal, however, the trial court, sua sponte, vacated the injunction, concluding that it was no longer warranted because of subsequent factual developments in this case. Thereafter, this court, sua sponte, ordered the parties to file statements concerning whether the trial court's vacatur order rendered the newspaper's appeal moot. Having considered the arguments of the parties concerning the effect of the trial court's vacatur of the injunction, we conclude that the appeal is moot. Contrary to the various arguments of the parties, we further conclude that present circumstances do not support: (1) review of the merits under the capable of repetition, yet evading review exception to the moot-ness doctrine; or (2) vacatur of the trial court's deci-sions to grant the respondent mother's motion for an injunction. Accordingly, we dismiss the appeal.

The record reveals the following relevant facts and procedural history. The respondents are parties to a pending marital dissolution proceeding. Their minor children are the subject of neglect proceedings pending on the trial court's juvenile docket, and have been in the custody of the Commissioner of Children and Families (commissioner) since an order of temporary custody was entered on March 20, 2014, and extended on April 4, 2014. On September 29, 2014, the trial court adjudi-cated the minor children as neglected, and ordered that they remain in the commissioner's custody pending reunification therapy. Thus far, the respondents have been unable to begin the court-ordered reunification therapy.

On October 28, 2014, the respondent father filed a petition for a writ of habeas corpus, contending that the minor children are unconstitutionally in the custody of the commissioner because he had received ineffec-tive assistance of counsel during prior juvenile court proceedings. The detailed allegations in the habeas cor-pus petition concern matters that should have been kept confidential under the statutes and rules of practice governing juvenile court proceedings. But, because the respondent father filed the habeas corpus petition elec-tronically as a civil matter using the Judicial Branch e-filing system, rather than as a confidential juvenile

matter,[3] the petition was temporarily available to the public as a newly filed civil case on the Judicial Branch website, at which time reporters employed by the newspaper learned about it. Although the habeas case was subsequently transferred to the juvenile docket and, thus, no longer appears on the Judicial Branch website, the content of the petition has since been published, and still appears, on other independent websites.

On November 20, 2014, Isaac Avilucea, a reporter for the newspaper, left the respondent mother a voice mail that informed her that he was writing a story about this case, and invited her to comment because the respondent father had accused her of abusing the minor children. On November 21, 2014, the respondent mother filed an ex parte motion seeking to prohibit the newspaper from publishing any information about this case, because such information is statutorily confidential under General Statutes § 46b-124,[4] and asking the trial court to order the newspaper to show cause why a permanent injunction should not enter to that effect. The respondent mother claimed that the publication of a news story about this case would cause irreparable harm to her, particularly with respect to her professional reputation, especially since the juvenile court proceeding is confidential and she has neither been arrested nor found by a court to have abused her children. The trial court denied the ex parte motion, but scheduled the matter for a hearing on November 24, 2014; it also ordered that the newspaper be made a party and given notice of the hearing.

On November 24, 2014, following that hearing, the trial court issued an injunction directing the newspaper "and its agents and representatives not to publish the contents of the habeas corpus petition filed by [the] respondent father." In an oral decision, the trial court attributed the improper public accessibility of the habeas petition to the respondent father's decision to file it electronically as a civil matter, rather than as a confidential juvenile matter.[5] The trial court acknowledged the "presumptive unconstitutionality of a prior restraint," but nevertheless relied on the minor children's privacy interests and found that "the state's interest in keeping the juvenile proceedings confidential is sufficiently weighted to overcome that presumption."[6] On the basis of this conclusion, and its determination that it was "unable to ascertain any less intrusive means that could mitigate against the harms that would occur from publication,"[7] the trial court issued the November 24 injunction that, inter alia, prohibited the newspaper from publishing the content of the habeas corpus petition.[8]

On November 25, 2014, the newspaper appealed from the judgment of the trial court imposing the November 24 injunction, and filed an emergency motion for a stay of that order the following day. On November 28, 2014,

the trial court filed a supplemental memorandum of decision that expanded on its oral decision explaining the November 24 injunction,[9] but also scheduled an immediate hearing about whether it should vacate that injunction. On December 1, 2014, the trial court conducted that hearing.

On December 3, 2014, the trial court issued a memorandum of decision vacating the November 24 injunction. The trial court stated that it had "reconsidered [the November 24 injunction] that the [newspaper] not publish information it obtained about these juvenile matters in light of the dissemination of the [respondent] father's habeas corpus petition, after the original order, on the websites of at least two news organizations and, in addition, by other accounts in the online media discussing the contents of the petition and other facts about these juvenile matters." The trial court observed that these factual developments "affect[ed] the balancing of interests that the court must consider in determining whether an order of prior restraint on the press is necessary to protect an interest of the 'highest order.'" It stated that, "[h]owever important the interests of the state and these children in the confidentiality of juvenile records and proceedings, continuing to order the [newspaper] not to publish this information, much of which has already been published elsewhere, will no longer have any effect in protecting these interests." The court determined that "the only narrow tailoring that the court can now employ to protect the children" is to "prohibit the parties from any further disclosures, rather than barring the [newspaper] from printing information that is already in the public domain." Thus, the trial court found that "restricting the [newspaper] from publishing information it has already acquired no longer serves any effective purpose," and, accordingly, vacated the November 24 injunction.[10]

Upon learning on December 3, 2014, that the trial court had vacated the November 24 injunction, this court marked over the newspaper's pending emergency motion for a stay. This court then issued a sua sponte order directing the parties to file statements concerning whether the appeal should be dismissed as moot in light of the trial court's decision to vacate the November 24 injunction.

In response to this court's order, the parties filed memoranda conceding that the newspaper's appeal is moot, but seeking review of the merits on the ground that the present appeal concerns a matter that is capable of repetition, yet evading review. Should we decline, however, to review this appeal on its merits, the newspaper asks us to vacate the trial court's oral and supplemental decisions relating to the now vacated November 24 injunction. The respondent mother and the guardian ad litem oppose that request. We address each issue in turn.

## I

It is well established that "[m]ootness implicates [this] court's subject matter jurisdiction and is thus a threshold matter for us to resolve. . . . It is a well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . An actual controversy must exist not only at the time the appeal is taken, but also throughout the pendency of the appeal. . . . When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot." (Internal quotation marks omitted.) *Dutkiewicz* v. *Dutkiewicz*, 289 Conn. 362, 366, 957 A.2d 121 (2008).

The parties agree that the newspaper's appeal has been rendered moot by the trial court's December 3 order vacating the November 24 injunction. They argue, however, that we should review the merits of this case because it presents a matter that is capable of repetition, yet evading review, citing numerous prior restraint cases, including *Globe Newspaper Co.* v. *Superior Court*, 457 U.S. 596, 102 S. Ct. 2613, 73 L. Ed. 2d 248 (1982), *Gannett Co.* v. *DePasquale*, 443 U.S. 368, 99 S. Ct. 2898, 61 L. Ed. 2d 608 (1979), *Nebraska Press Assn.* v. *Stuart*, 427 U.S. 539, 96 S. Ct. 2791, 49 L. Ed. 2d 683 (1976), and *Procter & Gamble Co.* v. *Bankers Trust Co.*, 78 F.3d 219 (6th Cir. 1996). We disagree with the parties, and conclude that the facts of this case do not fall within the capable of repetition, yet evading review exception to the mootness doctrine.

This court articulated the test governing the application of this exception in *Loisel* v. *Rowe*, 233 Conn. 370, 378, 660 A.2d 323 (1995). As this court has previously stated: "The mootness doctrine does not preclude a court from addressing an issue that is capable of repetition, yet evading review. . . . [F]or an otherwise moot question to qualify for review under the capable of repetition, yet evading review exception, it must meet three requirements. First, the challenged action, or the effect of the challenged action, by its very nature must be of a limited duration so that there is a strong likelihood that the substantial majority of cases raising a question about its validity will become moot before appellate litigation can be concluded. Second, there must be a reasonable likelihood that the question presented in the pending case will arise again in the future, and that it will affect either the same complaining party or a reasonably identifiable group for whom that party can be said to act as surrogate. Third, the question must have some public importance. Unless all three requirements are met, the appeal must be dismissed

as moot." (Citation omitted; internal quotation marks omitted.) *Dutkiewicz* v. *Dutkiewicz*, supra, 289 Conn. 367.

In reviewing these three factors, it is readily apparent that the constitutional issue presented in this case, namely, whether the state's interest in maintaining the confidentiality of juvenile court proceedings justifies a prior restraint on the constitutional free speech rights of the newspaper, presents a question of significant public importance under the third *Loisel* factor. Further, we assume, without deciding, that the second *Loisel* factor, namely, the likelihood of recurrence, is established, given the respondent mother's arguments about changing social mores "in an era in which people routinely post personal details online" via personal websites, blogs, or social media. We conclude, however, that on the facts of the present case, the parties cannot satisfy the first *Loisel* factor, namely, that the "challenged action, or the effect of the challenged action," is "by its very nature . . . of a limited duration so that there is a strong likelihood that the substantial majority of cases raising a question about its validity will become moot before appellate litigation can be concluded." (Internal quotation marks omitted.) *Dutkiewicz* v. *Dutkiewicz*, supra, 289 Conn. 367.

The first *Loisel* factor "reflects the functionally insurmountable time constraints present in certain types of disputes. . . . Paradigmatic examples are abortion cases and other medical treatment disputes." (Citation omitted; internal quotation marks omitted.) *Wallingford* v. *Dept. of Public Health*, 262 Conn. 758, 770 n.12, 817 A.2d 644 (2003). In comparison to the prior restraints at issue in the case law cited by the parties, all of which by their own terms were inherently time limited in a manner that would frustrate appellate review,[11] the trial court's orders in the present case contained no such durational constraint; this case became moot solely because the trial court itself vacated the November 24 injunction, upon determining that it was no longer warranted factually. Had the trial court not rendered the newspaper's appeal moot by vacating the November 24 injunction, procedural mechanisms exist under which this court or the Appellate Court could have provided appellate relief rapidly, such as by granting the newspaper's emergency motion for a stay, and implementing an expedited briefing, argument, and decision procedure, which could include the issuance of a decision from the bench or a summary written opinion that would later be supplemented by a comprehensive opinion. See, e.g., *Bysiewicz* v. *DiNardo*, 298 Conn. 748, 751–52, 6 A.3d 726 (2010); *Office of the Governor* v. *Select Committee of Inquiry*, 271 Conn. 540, 542 n.1, 858 A.2d 709 (2004). The availability of such expedited review procedures is a significant factor in concluding that the November 24 injunction was not so time limited as to justify resort

to the capable of repetition, yet evading review exception to the mootness doctrine. See *Peterson* v. *Robles*, 134 Conn. App. 316, 325, 39 A.3d 763 (2012) ("[o]n the basis of our judiciary's history of responses to election irregularity claims, we do not conclude that the inherent time limitation of an election cycle will typically prevent a court, upon review, from timely resolution of an election related claim").

We also disagree with the newspaper's argument that prior restraint orders like the November 24 injunction will *always* become moot because trial judges will vacate them, as in this case, upon learning that they are "pointless" once the subject information has become available elsewhere on the Internet. First, this argument is speculative in nature, and speculation by itself cannot form the basis for determining that a matter is so time limited as to qualify as one that is capable of repetition, yet evading review. See *Waterbury Hospital* v. *Connecticut Health Care Associates*, 186 Conn. 247, 254, 440 A.2d 310 (1982) ("The record demonstrates that the underlying labor dispute has been resolved for about one year. We are not entitled to assume that there will be a strike, accompanied by similar picketing, in the future even though the appellant claims otherwise."); *Russo* v. *Common Council*, 80 Conn. App. 100, 110, 832 A.2d 1227 (2003) ("*Loisel* does not provide an exception to the mootness doctrine when it is merely possible that a question could recur" [emphasis omitted]). Second, the dissemination of the information at issue elsewhere on the Internet would not necessarily render a prior restraint order moot as a matter of law, particularly given the potential of contempt sanctions for its violation, and the fact that such an order, *if sustained as constitutional*, could have some practical effect merely by reducing, if not completely eliminating, the flow to the public of confidential information. See *Ostergren* v. *Cuccinelli*, 615 F.3d 263, 284 (4th Cir. 2010) ("[a]n individual's interest in controlling the dissemination of information regarding personal matters does not dissolve simply because that information may be available to the public in some form" [internal quotation marks omitted]); *United States* v. *Three Juveniles*, 61 F.3d 86, 93 (1st Cir. 1995) (court rejected newspaper's argument that "because the press has already obtained and published some information, any further attempts by the [trial court] to preserve confidentiality are either futile or irrelevant" and concluded that "the fact that the juveniles have already suffered stigma does not justify removing or denying them all further protections" [emphasis omitted]), cert. denied sub nom. *Globe Newspaper Co.* v. *United States*, 517 U.S. 1166, 116 S. Ct. 1564, 134 L. Ed. 2d 664 (1996).

Although the constitutional issue presented in this case is significant, "[s]heer public importance . . . cannot remedy a failure to satisfy the other components" of the capable of repetition, yet evading review

exception to the mootness doctrine. *Loisel* v. *Rowe*, supra, 233 Conn. 387. With no expiration date or other inherent time limitation in the November 24 injunction, we decline to review the merits of the present case under that exception, and dismiss this appeal as moot.[12]

## II

We next address whether this court should vacate the trial court's decisions rendered prior to the December 3 order vacating the November 24 injunction. The newspaper contends that this court should "formally vacate" the trial court's legal rulings, rendered orally on November 24 and supported with a supplemental memorandum of decision on November 28, because "the trial court's [December 3] order vacating its own injunction (but not vacating its earlier ruling granting the injunction) has deprived the [newspaper] of its ability to appeal the adverse rulings." The newspaper, citing, inter alia, *Private Healthcare Systems, Inc.* v. *Torres*, 278 Conn. 291, 898 A.2d 768 (2006), and *State* v. *Singleton*, 274 Conn. 426, 876 A.2d 1 (2005), posits that vacatur is appropriate to prevent the trial court's earlier rulings from " 'spawning any legal consequences,' " and it requests the issuance of a published decision in order to ensure that electronic reporting services are properly alerted of the vacated status of the trial court's prior decisions.

In response, the respondent mother, supported by the guardian ad litem, distinguishes *Private Healthcare Systems, Inc.*, and contends that vacatur is improper because she, as the appellee, did nothing to lead to this appeal being mooted, and, in fact, "vigorously opposed" the trial court's decision to vacate the November 24 injunction, "unlike [the newspaper] which urged the [trial court] to do so." To this end, the guardian ad litem cites numerous cases, including *State* v. *Charlotte Hungerford Hospital*, 308 Conn. 140, 60 A.3d 946 (2013) (per curiam), and *State* v. *Boyle*, 287 Conn. 478, 949 A.2d 460 (2008), in support of the contention that vacatur will not serve the public interest because the trial court's November 28 memorandum of decision "was comprehensive and thorough and recognized the very narrow application of the prior restraint exception to the first amendment to juvenile child protection proceedings. The court's decision, while not binding precedent, correctly recognizes the critical importance that strict confidentiality has in the continued protection and oversight of children's best interests in juvenile proceedings." Finally, the guardian ad litem and the respondent mother argue that the trial court's decision will not " 'spawn any legal consequences' " because, as a trial court decision, it is not precedent binding on any court, and it will not have any collateral estoppel effects insofar as no other claims remain pending between the newspaper and the parties to this case. We agree with the respondent mother and the guardian ad litem, and

conclude that vacatur is not proper in the present case.

"Vacatur is commonly utilized . . . to prevent a judgment, unreviewable because of mootness, from spawning any legal consequences." (Internal quotation marks omitted.) *Private Healthcare Systems, Inc.* v. *Torres*, supra, 278 Conn. 303. "Although the equitable remedy of vacatur is rooted in our supervisory authority, we have generally followed the federal courts' approach in applying that doctrine. . . . In *United States* v. *Munsingwear, Inc.*, 340 U.S. 36, 40, 71 S. Ct. 104, 95 L. Ed. 36 (1950), the United States Supreme Court explained that vacatur of a mooted case clears the path for future relitigation of the issues between the parties and eliminates a judgment, review of which was prevented through happenstance. Subsequently, that court limited the application of vacatur in settled cases, noting that when mootness results from settlement . . . the losing party has voluntarily forfeited his legal remedy by the ordinary processes of appeal or certiorari, thereby surrendering his claim to the equitable remedy of vacatur. . . . The court, however, reiterated its support for the use of vacatur when a case is mooted by the vagaries of circumstance or the unilateral action of the party who prevailed below." (Citations omitted; internal quotation marks omitted.) *State* v. *Charlotte Hungerford Hospital*, supra, 308 Conn. 143–44; see also id. (discussing, inter alia, *U.S. Bancorp Mortgage Co.* v. *Bonner Mall Partnership*, 513 U.S. 18, 25, 115 S. Ct. 386, 130 L. Ed. 2d 233 [1994]). We also note that "[i]t is the [appellant's] burden, as the party seeking relief from the status quo of the appellate judgment, to demonstrate . . . equitable entitlement to the extraordinary remedy of vacatur." (Internal quotation marks omitted.) *Private Healthcare Systems, Inc.* v. *Torres*, supra, 303.

Having reviewed the record, we conclude that this is not a proper case for the use of the extraordinary remedy of vacatur. First, unlike cases where vacatur has been deemed appropriate, the newspaper, as the appellant, bears at least some responsibility for the events leading to the mootness of the present case. It filed the appeal and associated motions challenging the November 24 injunction, and it argued in support of vacatur before the trial court at the December 1 hearing. Second, the newspaper does not claim that leaving the trial court's earlier decision intact will cause it to suffer any preclusive consequences in the present case or in any future litigation, such as issue preclusion via collateral estoppel. Cf. *State* v. *Charlotte Hungerford Hospital*, supra, 308 Conn. 145–46 (vacating Appellate Court judgment rendered moot by settlement of claim between state and third party because that "unreviewable judgment could well have preclusive, as opposed to merely precedential, effect against the hospital in future litigation" with state); *Private Healthcare Systems, Inc.* v. *Torres*, supra, 278 Conn. 304–305 (vacating

Appellate Court decision when, after securing favorable Appellate Court judgment, physician-appellee "unilaterally caused the issue in dispute to become moot upon voluntarily severing his ties with the provider network," in order to ensure that he "could not, under any future scenario, use that [Appellate Court] judgment as a sword against" health insurer in future employment actions).

Thus, the newspaper's sole argument in support of vacatur appears to be that the reasoning contained in the trial court's earlier memoranda of decision in support of the now vacated November 24 injunction is legally incorrect and, therefore, a bad precedent. Although previous decisions from this court in certified appeals appear to consider the precedential effect of an Appellate Court opinion as a "legal consequence" that supports the use of vacatur "in the public interest"; see, e.g., *State* v. *Boyle*, supra, 287 Conn. 489–90; *State* v. *Singleton*, supra, 274 Conn. 440–41; the present case is readily distinguishable because it is a direct appeal from a trial court decision. In contrast to an Appellate Court decision, a trial court decision does "not establish binding precedent." *McDonald* v. *Rowe*, 43 Conn. App. 39, 43, 682 A.2d 542 (1996); see also, e.g., *State* v. *Marquez*, 291 Conn. 122, 173, 967 A.2d 56 (*Katz, J.*, concurring) ("trial courts are not empowered to bind police departments, much less their sister tribunals, by virtue of their rulings"), cert. denied, 558 U.S. 895, 130 S. Ct. 237, 175 L. Ed. 2d 163 (2009). Indeed, under the law of the case doctrine, the trial court's decision need not even be followed by a judge making a subsequent decision in this very case. See, e.g., *Brown* v. *Soh*, 280 Conn. 494, 508–509, 909 A.2d 43 (2006); *Breen* v. *Phelps*, 186 Conn. 86, 99–100, 439 A.2d 1066 (1982). Because the trial court's decision lacks preclusive effect and is devoid of precedential value, we conclude that the newspaper is not entitled to the extraordinary remedy of vacatur.

The appeal is dismissed.

In this opinion the other justices concurred.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

** January 22, 2015, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] The newspaper appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] We note that the respondent father and the minor children, each of whom is separately represented by counsel, have not participated in the present appeal. We also note that the guardian ad litem for the minor children has filed, with the permission of this court, a statement concerning the mootness of the present appeal.

[3] In his publicly filed petition, the respondent father did not attempt to redact names or use pseudonyms. The respondent father also did not seek to seal that document pursuant to the rules of practice.

[4] General Statutes § 46b-124 provides in relevant part: "(a) For the purposes of this section, 'records of cases of juvenile matters' includes, but is

not limited to, court records, records regarding juveniles maintained by the Court Support Services Division, records regarding juveniles maintained by an organization or agency that has contracted with the Judicial Branch to provide services to juveniles, records of law enforcement agencies including fingerprints, photographs and physical descriptions, and medical, psychological, psychiatric and social welfare studies and reports by juvenile probation officers, public or private institutions, social agencies and clinics.

"(b) All records of cases of juvenile matters, as provided in section 46b-121, except delinquency proceedings, or any part thereof, and all records of appeals from probate brought to the superior court for juvenile matters pursuant to section 45a-186, shall be confidential and for the use of the court in juvenile matters, and open to inspection or disclosure to any third party, including bona fide researchers commissioned by a state agency, only upon order of the Superior Court, except that: (1) Such records shall be available to (A) the attorney representing the child or youth, including the Division of Public Defender Services, in any proceeding in which such records are relevant, (B) the parents or guardian of the child or youth until such time as the child or youth reaches the age of majority or becomes emancipated, (C) an adult adopted person in accordance with the provisions of sections 45a-736, 45a-737 and 45a-743 to 45a-757, inclusive, (D) employees of the Division of Criminal Justice who, in the performance of their duties, require access to such records, (E) employees of the Judicial Branch who, in the performance of their duties, require access to such records, (F) another court under the provisions of subsection (d) of section 46b-115j, (G) the subject of the record, upon submission of satisfactory proof of the subject's identity, pursuant to guidelines prescribed by the Office of the Chief Court Administrator, provided the subject has reached the age of majority or has been emancipated, (H) the Department of Children and Families, (I) the employees of the Division of Public Defender Services who, in the performance of their duties related to Division of Public Defender Services assigned counsel, require access to such records, and (J) judges and employees of the Probate Court who, in the performance of their duties, require access to such records; and (2) all or part of the records concerning a youth in crisis with respect to whom a court order was issued prior to January 1, 2010, may be made available to the Department of Motor Vehicles, provided such records are relevant to such order. Any records of cases of juvenile matters, or any part thereof, provided to any persons, governmental or private agencies, or institutions pursuant to this section shall not be disclosed, directly or indirectly, to any third party not specified in subsection (d) of this section, except as provided by court order, in the report required under section 54-76d or 54-91a or as otherwise provided by law. . . ."

[5] The attorney for the respondent mother called the respondent father to the stand during the hearing. The respondent father then declined to testify, invoking his constitutional right to remain silent. The trial court then took an adverse inference against the respondent father.

[6] In so concluding, the trial court reviewed numerous cases, including the Colorado Supreme Court's rape shield law decision in *People* v. *Bryant*, 94 P.3d 624 (Colo. 2004), as well as § 46b-124, and maintained that it "would be hard to find a state interest of any higher order than . . . this state's interest in protecting the confidentiality of matters pending in the juvenile court," and particularly child protection proceedings rather than delinquency proceedings. The trial court also emphasized the sensitivity of the information at issue, namely, allegations that the respondent mother had "physically abused the children. Children deserve to be protected from that type of information being disclosed to the public when [it is] the result of information from a juvenile matter proceeding."

[7] The trial court determined that the availability of the habeas petition on other websites did not preclude it from granting the respondent mother's motion because "the remaining of . . . the habeas corpus petition contents on those other sites, [for] the present doesn't mean that they'll continue to be there."

[8] The trial court stated that it was willing to consider the views of the parties with respect to the specific contents of the habeas corpus petition that could be disclosed, noting in particular that it could not prevent the publication of a "matter of public record," namely, that a petition was filed seeking custody of a minor child or children, and subsequently transferred to the juvenile docket. The trial court further ordered a transcript of its decision "to be provided to all counsel," but ordered the attorneys not to disclose it further, "even to their clients."

[9] The trial court directed that the content of the supplemental memoran-

dum of decision be subject to the "same confidentiality orders as the transcript of the oral memorandum of decision."

[10] The trial court then denied the respondent mother's motion for a stay, previously made conditionally and orally at the December 1, 2014 hearing, of its decision to vacate the injunction. In considering the respondent mother's motion seeking review of that decision; see Practice Book § 66-6; we granted review, but denied the relief requested, thus, not disturbing the trial court's exercise of its discretion with respect to the stay. See, e.g., *Griffin Hospital* v. *Commission on Hospitals & Health Care*, 196 Conn. 451, 456–59, 493 A.2d 229 (1985).

[11] See *Globe Newspaper Co.* v. *Superior Court*, supra, 457 U.S. 602–603 (challenged statute required court to order courtroom closure only during testimony by minor sexual assault victim); *Gannett Co.* v. *DePasquale*, supra, 443 U.S. 377 ("The order closing a pretrial hearing is too short in its duration to permit full review. And to the extent the order has the effect of denying access to the transcript, termination of the underlying criminal proceeding by a guilty plea, as in this case, or by a jury verdict, nearly always will lead to a lifting of the order before appellate review is completed."); *Nebraska Press Assn.* v. *Stuart*, supra, 427 U.S. 546–47 (order against publication expired by its own terms when jury was impaneled); *Procter & Gamble Co.* v. *Bankers Trust Co.*, supra, 78 F.3d 224 (temporary restraining order for three weeks).

We address in detail *Procter & Gamble Co.* v. *Bankers Trust Co.*, supra, 78 F.3d 224, on which the newspaper relies for the following proposition: "Review must be kept alive when a judge issues a prior restraint that he can cease when challenged and then take up again at a later time, only to cease again just in time to prevent appellate review. The doctrine of mootness is not to be used as a spoof on appellate courts." *Procter & Gamble Co.* is distinguishable because, in that case, the permanent injunction against publication of a magazine article disclosing the content of original sealed documents "still remains in effect even though another order was entered at the same time *making copies of the document available to the public*." (Emphasis added.) Id. In the present case, however, the November 24 injunction itself was completely vacated by the trial court, rather than rendered factually moot by a collateral order.

Thus, as the United States Court of Appeals for the Sixth Circuit stated, *Procter & Gamble Co.* concerned "a strange combination of orders. Why enter an injunction against publication of original documents and then allow publication of copies of the documents? Such orders serve no purpose other than to make a statement or declaration of wrongdoing while seeking to prevent review under the mootness doctrine. It is a clever strategem: Now you see it, now you don't. But appellate courts cannot allow themselves to be done out of their jurisdiction so cleverly. We would abdicate our responsibility of judicial review. So long as the permanent injunction remains technically in effect, we will review it as an injunction just as technically." Id.

[12] Moreover, given the trial court's vacatur of the judgment at issue, namely, the November 24 injunction and the associated orders, query whether the newspaper is still an "aggrieved" party, as is required by General Statutes § 52-263. If we were to hear this appeal on its merits, there does not appear anything left for us to reverse should the newspaper prevail—even pyrrhically under the capable of repetition, yet evading review exception—insofar as the newspaper has now received all of the relief it would have obtained by a successful appeal. See, e.g., *In re Allison G.*, 276 Conn. 146, 158, 883 A.2d 1226 (2005) ("As a general rule, a party that prevails in the trial court is not aggrieved. . . . Moreover, [a] party cannot be aggrieved by a decision that grants the very relief sought. . . . Such a party cannot establish that a specific personal and legal interest has been specially and injuriously affected by the decision." [Internal quotation marks omitted.]); id. ("One who has received in the trial court all the relief that he or she has sought therein is not aggrieved by the judgment and has no standing to appeal. In particular, a litigant has no right to appeal a judgment in his favor merely for the purpose of having the judgment based on a different legal ground than that relied upon by the trial court . . . ." [Internal quotation marks omitted.]), quoting 5 Am. Jur. 2d 47, Appellate Review § 276 (1995); cf. *In re Allison G.*, supra, 158 ("[a] prevailing party . . . can be aggrieved [however] if the relief awarded to that party falls short of the relief sought" [internal quotation marks omitted]).