HAROLD BURBANK ET AL. *v.* BOARD
OF EDUCATION OF THE
TOWN OF CANTON
(SC 18591)

Rogers, C. J., and Norcott, Katz, Palmer, McLachlan,
Eveleigh and Vertefeuille, Js.

---

Argued October 27, 2010—officially released January 5, 2011*

---

\* January 5, 2011, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

*Harold Burbank*, for the appellants (named plaintiff et al.).

*Peter J. Murphy*, with whom, on the brief, was *Thomas B. Mooney*, for the appellee (defendant).

*Opinion*

PALMER, J. The named plaintiff, Harold Burbank, and the plaintiffs Marianne Burbank and A.B.[1] appeal[2] from the judgment of the trial court denying their application for an injunction prohibiting the defendant, the board of education of the town of Canton (board), from implementing its policy of using law enforcement personnel with drug-sniffing dogs to conduct unannounced, suspicionless searches on school property without a warrant.[3] Because we conclude that the plaintiffs' claims are moot, we dismiss their appeal.

[1] Harold Burbank and Marianne Burbank are spouses, and A.B. is their child. Harold Burbank, Marianne Burbank, Elisa Villa and Jane Latus were the original plaintiffs in the present action. A.B. and I.J., Latus' child, were added as plaintiffs, and Villa withdrew from the action. Latus and I.J. are not parties to this appeal. In the interest of simplicity, we refer to Harold Burbank, Marianne Burbank and A.B. collectively as the plaintiffs throughout this opinion.

[2] The plaintiffs appealed to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[3] Canton Board of Education Policy 5145.122 (a) provides in relevant part: "The [b]oard shall permit the administration to invite law enforcement agencies . . . to search school property with dogs trained for the purpose of detecting the presence of illegal substances, when necessary to protect the health and safety of students, employees or property and to detect the presence of illegal substances or contraband, including alcohol and/or drugs. The use of trained canine sniffing dogs is subject to the following:

\* \* \*

"3. All school property such as lockers, classrooms, parking areas and storage areas may be searched.

\* \* \*

"5. Once notification has been given to parents and students, through the inclusion of the policies in the student and/or parent handbook, the school district will have met its obligation to advertise the searches. Additional notices need not be given and actual times or dates of planned searches need not be released in advance.

"6. Only the dog's official handler will determine what constitutes an alert by the dog. If the dog alerts on a particular item or place, the student having

The following facts and procedural history are relevant to our analysis of the mootness issue. On June 5, 2008, following a request by the board and Kevin D. Case, the superintendent of public schools of the town of Canton, officers of the Canton police department conducted a sweep of unattended cars and lockers at Canton High School and Canton Middle School using drug-sniffing dogs. The purpose of the warrantless, suspicionless sweep, which was expressly authorized by the board's policies, was to detect the presence of illegal substances on school property. The students were informed at the beginning of their first period class that the sweep would occur and that they were to remain in their classrooms during the sweep unless there was an emergency. The sweep began near the end of the first period and lasted approximately one hour. As a result of certain contraband found during the sweep, one student was arrested.

Thereafter, on April 3, 2009, Harold Burbank and Marianne Burbank commenced the present action against the board on their own behalf and as parents and next friends of their child, A.B., who, at the time of the drug sweep, was a student at Canton High School. The plaintiffs sought to enjoin the board from implementing its policy of conducting warrantless, suspicionless sweeps on school property with drug-sniffing dogs or, alternatively, to require school officials to provide at least forty-eight hours notice to parents prior to such a sweep. According to the complaint, the board's policy of conducting unannounced sweeps on school property violated (1) the Burbanks' rights as parents to manage the safety and education of their child under

the use of that item or place or responsibility for it shall be called to witness the search. If a dog alerts on a locked or unlocked vehicle, the student who brought it onto district property shall be asked to unlock it for inspection.

"7. Law enforcement agencies will be given full authorization to investigate and prosecute any person(s) found to be responsible for illegal substances(s) on school property."

the due process clause of article first, § 8,[4] of the Connecticut constitution, and (2) A.B.'s right to be free from unreasonable searches and seizures under article first, §§ 8 and 9,[5] of the Connecticut constitution.[6]

On September 14, 2009, following a hearing on the plaintiffs' application for an injunction, the trial court issued a memorandum of decision denying the application. The court declined to review the plaintiffs' state constitutional claims because they had been inadequately briefed.[7] The court, however, considered the plaintiffs' rights under the federal constitution, treating the plaintiffs' federal and state constitutional rights as coextensive for purposes of the present case. The trial court concluded that the board's policy of having law enforcement personnel use drug-sniffing dogs to conduct warrantless, suspicionless sweeps on school property without advance notice to parents did not violate the plaintiffs' federal constitutional rights.[8] Because the

[4] Article first, § 8, of the Connecticut constitution provides in relevant part: "No person shall be . . . deprived of life, liberty or property without due process of law . . . ."

[5] Article first, § 9, of the Connecticut constitution provides: "No person shall be arrested, detained or punished, except in cases clearly warranted by law."

[6] We note that, although the plaintiffs relied on article first, §§ 8 and 9, of the Connecticut constitution in support of their claim that the board's policy of conducting warrantless sweeps on school property violated A.B.'s right to be free from unreasonable searches and seizures, article first, § 7, is the provision of the state constitution that expressly safeguards persons from "unreasonable searches or seizures . . . ."

[7] The trial court had given the plaintiffs additional time within which to supplement their state constitutional analysis; see State v. Geisler, 222 Conn. 672, 684–85, 610 A.2d 1225 (1992) ("[i]n order to construe the contours of our state constitution and reach reasoned and principled results, the following tools of analysis should be considered to the extent applicable: [1] the textual approach . . . [2] holdings and dicta of this court, and the Appellate Court . . . [3] federal precedent . . . [4] sister state decisions . . . [5] the historical approach, including the historical constitutional setting and the debates of the framers . . . and [6] economic/sociological considerations" [citations omitted]); but the plaintiffs failed to do so.

[8] Specifically, the trial court concluded, in rejecting the plaintiffs' constitutional claims, that a warrantless sweep using drug-sniffing dogs is not a

trial court determined that the plaintiffs could not prevail on the merits of their claims, it denied their application for injunctive relief.

On appeal, the plaintiffs contend that the trial court improperly failed to review their state constitutional claims and, further, that the board's policy of allowing law enforcement personnel to conduct the sweeps violates the state constitution, at least in the absence of advance notice of the sweeps.[9] During oral argument before this court, however, the plaintiffs acknowledged that A.B. had graduated from Canton High School in June, 2010. As a consequence, although the plaintiffs contend that this appeal raises significant issues concerning the scope of parental rights and the rights of students to be free from unreasonable searches and seizures under the state constitution, we must dismiss it as moot because A.B. no longer is subject to the policies of the board and because the plaintiffs' claims

"search" for purposes of the fourth amendment to the federal constitution because students do not have a reasonable expectation of privacy in the odor or "aroma" emanating from their unattended lockers and motor vehicles on school property. The trial court further concluded that the order that students remain in their classrooms did not constitute a "seizure" of the students within the meaning of the fourth amendment because school officials are authorized to schedule student activities during the school day, the students were allowed to leave their classrooms in the case of an emergency, and much of the time that the students were kept in their classrooms occurred during what normally would have been their first period classes. Finally, the court rejected the plaintiffs' claim that the board's policy violated their right to family integrity, concluding that the policy of allowing law enforcement personnel to conduct the sweeps for contraband on school property does not implicate a fundamental interest in family integrity or strike at the heart of the parent-child relationship. We note, in addition, that the trial court also found that the evidence did not support the plaintiffs' allegation that the sweep conducted at the instance of the board had caused harm to students.

[9] The plaintiffs also claim on appeal that the trial court improperly excluded, on hearsay grounds, certain evidence that, in the view of the plaintiffs, demonstrates the harm to students that was caused by the sweep.

do not fall within the "capable of repetition, yet evading review" exception to the mootness doctrine.[10]

"Mootness implicates [this] court's subject matter jurisdiction and is thus a threshold matter for us to resolve. . . . It is a well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . An actual controversy must exist not only at the time the appeal is taken, but also throughout the pendency of the appeal. . . . When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot. . . . [Under such circumstances, the case can not be reviewed] unless the defendant's claim falls under an exception to the mootness doctrine . . . .

"The mootness doctrine does not preclude a court from addressing an issue that is capable of repetition, yet evading review. . . . [F]or an otherwise moot question to qualify for review under the capable of repetition, yet evading review exception, it must meet three requirements. First, the challenged action, or the effect of the challenged action, by its very nature must be of a limited duration so that there is a strong likelihood that the substantial majority of cases raising a question about its validity will become moot before appellate litigation can be concluded. Second, there must be a reasonable likelihood that the question presented in the pending case will arise again in the future, and that it will affect either the same complaining party or a

---

[10] Neither party has raised the issue of mootness on appeal. Because, however, mootness implicates this court's subject matter jurisdiction, we address it sua sponte. See, e.g., *Dutkiewicz* v. *Dutkiewicz*, 289 Conn. 362, 366 and n.6, 957 A.2d 821 (2008).

reasonably identifiable group for whom that party can be said to act as surrogate. Third, the question must have some public importance. Unless all three requirements are met, the appeal must be dismissed as moot." (Citations omitted; internal quotation marks omitted.) *Dutkiewicz* v. *Dutkiewicz*, 289 Conn. 362, 366–67, 957 A.2d 821 (2008).

"The first element in the analysis pertains to the length of the challenged action . . . [and whether there are] functionally insurmountable time constraints [to full appellate review]. . . . The basis for this element derives from the nature of the exception. If an action or its effects [are] not of inherently limited duration, the action can be reviewed the next time it arises, when it will present an ongoing live controversy. Moreover, if the question presented is not strongly likely to become moot in the substantial majority of cases in which it arises, the urgency of deciding the pending case is significantly reduced." (Citations omitted.) *Loisel* v. *Rowe*, 233 Conn. 370, 383–84, 660 A.2d 323 (1995). This requirement is satisfied when there is a strong likelihood that the inherently limited duration of the action will cause a substantial majority of cases raising the same issue to become moot prior to final appellate resolution. See *Sweeney* v. *Sweeney*, 271 Conn. 193, 201–202, 856 A.2d 997 (2004).

As we noted previously, A.B., a student when this action was commenced, graduated from Canton High School in June, 2010. Consequently, A.B. no longer is subject to the board's policies. Thus, neither A.B. nor A.B.'s parents can be affected personally by any decision of this court granting them the injunctive relief that they have sought, namely, prohibiting the board from implementing its policy of allowing law enforcement personnel to conduct warrantless sweeps on school property with drug-sniffing dogs or, alternatively, requiring that the board provide at least forty-

eight hours notice of any such sweep.[11] "In determining mootness, the dispositive question is whether a successful appeal would benefit the plaintiff . . . in any way." (Internal quotation marks omitted.) *In re Jorden R.*, 293 Conn. 539, 556, 979 A.2d 469 (2009). Because our resolution of the plaintiffs' appeal in their favor would not benefit them in any way, their claims are moot.

Furthermore, we are not persuaded that the claims that the plaintiffs raise in this appeal qualify for review under the capable of repetition, yet evading review exception to the mootness doctrine. It is true, of course, that the opportunity of a parent or a student to litigate a claim challenging the board's policy is inherently limited in duration due to the fact that the effect of the policy on any particular student necessarily terminates upon that student's graduation. This limitation, however, is not so substantial, when compared to the time necessary to conclude appellate litigation, that it is very likely to cause a significant majority of cases raising a challenge to the policy to become moot in advance of final appellate resolution. See *Sweeney* v. *Sweeney*, supra, 271 Conn. 201–202. This is so because the board's policy concerning the sweeps applies to all students at Canton High School and Canton Middle School. Thus, an action challenging the policy could present a live controversy for as long as six years before becoming moot if that action were to be brought by a first year middle school student and the student's parents. Indeed, it appears that the present action itself would not have been rendered moot if one of the original plaintiffs, whose child was a student at Canton Middle School when the action was filed, had remained a party to the action.[12] Furthermore, for purposes of our analy-

---

[11] Of course, this case would not be moot if the plaintiffs had sought money damages arising out of the June 5, 2008 sweep. The plaintiffs, however, have sought injunctive relief only.

[12] Elisa Villa, who withdrew from the action; see footnote 1 of this opinion; apparently was the parent of a student at Canton Middle School.

sis, it is significant to note that, in the present case, only approximately one and one-half years had elapsed from the time that the plaintiffs commenced this action, on April 3, 2009, until the date that this court heard oral argument in this appeal.[13] Because so many Canton middle and high school students and their parents with standing to bring an action seeking to enjoin the board from implementing its policy likely would be able to obtain a final resolution of their appeal prior to the students' graduation, we cannot conclude that most actions challenging the policy would become moot before the appeals process has been completed. On the contrary, it is reasonable to expect that most such appeals would be resolved before the case becomes moot. Accordingly, the plaintiffs are not entitled to consideration of their appeal under the exception applicable to cases that, although moot, are capable of repetition, yet evading review. The plaintiffs' appeal therefore must be dismissed for lack of subject matter jurisdiction.

The appeal is dismissed.

In this opinion the other justices concurred.

---

[13] We also note that the plaintiffs did not bring the present action until approximately ten months after the sweep had occurred, a period that accounts for approximately one third of the total amount of time that has elapsed from the date of the sweep until our resolution of the plaintiffs' claims on appeal.