# IN RE EMONI W. ET AL.*
## (AC 32453)
## (AC 32454)

Bishop, Lavine and Beach, Js.**

Argued January 19—officially released June 28, 2011

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in these appeals are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

** This case originally was argued before a panel of this court consisting of Judges Harper, Lavine and Beach on January 19, 2011. After oral argument, Judge Bishop replaced Judge Harper on the panel. All parties agreed that oral argument before the revised panel was not needed.

*Michael F. Miller*, for the appellants (minor children in AC 32453).

*Don M. Hodgdon*, for the appellant (respondent father in AC 32454).

*Tammy Nguyen-O'Dowd*, assistant attorney general, with whom, on the brief, were *George Jepsen*, attorney general, *Richard Blumenthal*, former attorney general, and *Susan T. Pearlman*, assistant attorney general, for the appellee (petitioner in both cases).

*Sarah Healy Eagan* filed a brief for the Center for Children's Advocacy, Inc., et al. as amici curiae.

*Opinion*

LAVINE, J. The respondent father (respondent) and his minor children (children),[1] Emoni W. and Marlon

---

[1] Children are parties to juvenile cases involving adjudications of neglect and the termination of parental rights. See Practice Book § 32a-1 et seq. Children also have independent standing to bring a direct appeal of a judgment terminating parental rights. See *In re Melody L.*, 290 Conn. 131, 156–57, 962 A.2d 81 (2009).

W., appeal from the judgments of the trial court finding that the requirements of the Interstate Compact on the Placement of Children (compact), General Statutes § 17a-175, apply to the placement of a child with an out-of-state, noncustodial parent. On appeal, the respondent and the children argue that the court erred in finding that, pursuant to § 17a-175,[2] it could not place the children with the respondent without an approved compact study from the commonwealth of Pennsylvania, the permanent residence of the respondent.[3] Because we conclude that the respondent's and children's claims are moot and do not fall under any exceptions to the mootness doctrine, we lack subject matter jurisdiction to address their claims on appeal.

The following facts and procedural history are relevant to these appeals. The petitioner, the commissioner of children and families, became involved with the children because on April 28 and May 19, 2010, their mother[4] failed to provide adequate supervision of them. On July

[2] General Statutes § 17a-175 provides in relevant part: *"Each child requiring placement shall receive the maximum opportunity to be placed in a suitable environment and with persons or institutions having appropriate qualifications and facilities to provide a necessary and desirable degree and type of care. . . .* No sending state shall send, bring, or cause to be sent or brought into any other party state any child for placement in foster care or as a preliminary to a possible adoption unless the sending agency shall comply with each and every requirement set forth in this article and with the applicable laws of the receiving state governing the placement of children therein. . . . *Prior to sending, bringing or causing any child to be sent or brought into a receiving state for placement in foster care or as a preliminary to a possible adoption, the sending agency shall furnish the appropriate public authorities in the receiving state written notice of the intention to send, bring, or place the child in the receiving state. . . ."* (Emphasis added.)

[3] The respondent further claims that § 17a-175 violates a biological parent's procedural and substantive due process rights under the federal and Connecticut constitutions. We do not reach the constitutional claims in light of our conclusion that subject matter jurisdiction is lacking.

[4] The mother of the minor children has not appealed. We therefore refer in this opinion to the respondent father as the respondent.

9, 2010, the mother was arrested and charged with four counts of risk of injury to a child, possession of crack cocaine with intent to sell, possession of marijuana with intent to sell, possession of a hallucinogenic with intent to sell and operating a drug factory. Also on July 9, 2010, the children were removed from the mother's home under a ninety-six hour hold pursuant to General Statutes § 17a-101g.

On July 12, 2010, the court granted the petitioner's ex parte motions for orders of temporary custody as to the children. On this date, the petitioner, for the first time, became aware of the respondent. The petitioner learned that the respondent was living in Pennsylvania and that he previously had been responsible for the children's care for extended periods of time during school holidays. The petitioner also became aware that the respondent wanted to have the children live with him after their mother had been arrested.

On July 16, 2010, a preliminary hearing was held concerning the petitioner's orders for temporary custody. At this hearing, the respondent argued that § 17a-175 did not apply to him as a noncustodial parent and requested that the court allow him to take custody of the children. The court did not rule in response to the respondent's request but, instead, scheduled oral argument on the issue of whether § 17a-175 applied to an out-of-state, noncustodial parent. On July 23, 2010, the court concluded that § 17a-175 does apply to the placement of children with out-of-state, noncustodial parents. The children and the respondent filed separate appeals from this decision on July 30 and August 5, 2010, respectively.[5]

[5] Practice Book § 61-6 (c) provides: "To the extent provided by law, the defendant or the state may appeal from a ruling that is not a final judgment or from an interlocutory ruling deemed to be a final judgment." This judgment is akin to an order for temporary custody, which our Supreme Court previously has concluded is immediately appealable as a final judgment. See *Madigan* v. *Madigan*, 224 Conn. 749, 757, 620 A.2d 1276 (1993). In *Madigan*, the court was persuaded by the plaintiff's argument that "[a] lost opportunity

At a hearing on September 16, 2010, the court reported that it received the results of the compact study, authorizing placement of the children with the respondent in Pennsylvania on the condition that the court order six months of protective supervision. On this same date, the court adjudicated the children neglected and granted joint legal custody of the children to the respondent and the mother with physical custody in the respondent. The court also ordered protective supervision for a period of six months with the respondent.[6] At the time of oral argument in this court, the children were living with the respondent.[7]

Before we may address the respondent's and children's claims that § 17a-175 does not apply to out-of-state, noncustodial parents, we must first address whether we are precluded from reviewing their claims because they are moot. The issue of mootness was not addressed by the parties in their initial briefs or at oral argument. We ordered, sua sponte, the parties to submit supplemental briefs addressing whether the claims were moot and, if so, whether review was still permissible under the "capable of repetition, yet evading review" exception to the mootness doctrine.

The parties all agree that the claims are moot; however, they also all contend that the claims ought to be

to spend significant time with one's child cannot be replaced by a subsequent order of custody as part of an ultimate dissolution judgment," and "[t]o deny immediate relief to an aggrieved parent interferes with the parent's custodial right over a significant period in a manner that cannot be redressed by a later appeal." Id., 756. The court, therefore, concluded that "temporary custody orders are immediately appealable because an immediate appeal is the only reasonable method of ensuring that the important rights surrounding the parent-child relationship are adequately protected." Id., 757. The court's decision concerning the applicability of the compact raises similar concerns and is, therefore, immediately appealable as a final judgment.

[6] This protective order has not been appealed.

[7] In the supplemental brief submitted by the respondent, we were informed that the period of protective supervision ended on March 18, 2011.

reviewed because they are capable of repetition, yet evading review. See *Loisel* v. *Rowe*, 233 Conn. 370, 382–83, 660 A.2d 323 (1995). Notwithstanding the parties' common position, we must conduct our own independent analysis. "[A] subject matter jurisdictional defect may not be waived . . . [or jurisdiction] conferred by the parties, explicitly or implicitly. . . . [T]he question of subject matter jurisdiction is a question of law . . . and, once raised, either by a party or by the court itself, the question must be answered before the court may decide the case." (Internal quotation marks omitted.) *D'Auria* v. *Solomine*, 107 Conn. App. 711, 714–15, 947 A.2d 345 (2008).

"Mootness implicates [this] court's subject matter jurisdiction and is thus a threshold matter for us to resolve. . . . It is a well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . An actual controversy must exist not only at the time the appeal is taken, but also throughout the pendency of the appeal. . . . When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot." (Internal quotation marks omitted.) Id., 714.

We agree with the parties that the respondent's and children's claims are moot because the compact study, recommending placement of the children with the respondent, was completed and the court granted the respondent legal and physical custody of the minor children during the pendency of these appeals. Furthermore, as noted, the period of protective supervision ordered by the court as a result of the compact study

expired on March 18, 2011. There is, therefore, no practical relief that we can provide to the respondent or the children. We recognize, however, that review of the claims is still possible if they meet the requirements of an exception to the mootness doctrine. The respondent and the children argue that their claims can be reviewed under the "capable of repetition, yet evading review" exception. We disagree.

"Our cases reveal that for an otherwise moot question to qualify for review under the 'capable of repetition, yet evading review' exception, it must meet three requirements. First, the challenged action, or the effect of the challenged action, by its very nature must be of a limited duration so that there is a strong likelihood that the substantial majority of cases raising a question about its validity will become moot before appellate litigation can be concluded. Second, there must be a reasonable likelihood that the question presented in the pending case will arise again in the future, and that it will affect either the same complaining party or a reasonably identifiable group for whom that party can be said to act as surrogate. Third, the question must have some public importance. Unless all three requirements are met, the appeal must be dismissed as moot." *Loisel* v. *Rowe*, supra, 233 Conn. 382–83.

"[A] party typically satisfies [the first] prong if there exists a 'functionally insurmountable time [constraint]' "; *Dutkiewicz* v. *Dutkiewicz*. 289 Conn. 362, 367, 957 A.2d 821 (2008); or "the challenged action had an intrinsically limited lifespan." *Loisel* v. *Rowe*, supra, 233 Conn. 383. In other words, "[t]his requirement is satisfied when there is a strong likelihood that the inherently limited duration of the action will cause a substantial majority of cases raising the same issue to become moot prior to final appellate resolution." *Burbank* v. *Board of Education*, 299 Conn. 833, 840, 11 A.3d 658 (2011).

We conclude that the first prong of *Loisel* is not satisfied because the challenged action here, the application of § 17a-175 to out-of-state, noncustodial parents, is not inherently limited in duration and will not cause a substantial majority of cases raising the same issue to become moot prior to final appellate resolution. An order requiring that a compact study must be completed before a child can be placed with an out-of-state, noncustodial parent has an indefinite lifespan every time the receiving state disapproves of the transfer. Compare *In re Fabian A.*, 106 Conn. App. 151, 155–56, 941 A.2d 411 (2008) (order extending delinquency commitment inherently limited because, by statute, extension can last no more than eighteen months).

The respondent and the children argue that the first prong of *Loisel* is satisfied because orders of temporary custody are, by their very nature, limited in duration. The respondent and the children mischaracterize the challenged action that we must review under the first prong of *Loisel*. Although the court granted the petitioner's ex parte motions for orders of temporary custody as to the children on July 12, 2010, that is not the challenged action before this court. We are being asked to address whether the court's conclusion that § 17a-175 applies to the placement of children with out-of-state, noncustodial parents was proper. As noted, we conclude that this order does not have an inherently limited lifespan.[8]

---

[8] Although an appeal from the court's orders of temporary custody is not the issue in this case, we note that in *In re Forrest B.*, 109 Conn. App. 772, 953 A.2d 887 (2008), the respondent mother appealed from the judgments of the trial court sustaining orders of temporary custody as to her two minor children. Id., 773. Although she conceded that this issue was moot, the respondent argued that her claims could be reviewed under the "capable of repetition, yet evading review" exception to the mootness doctrine. Id., 775. The respondent, however, did not produce any evidence that orders of temporary custody are, by their very nature, of such a limited duration that there is a strong likelihood that they will become moot before appellate litigation can be concluded. This court concluded that "[i]n failing to establish that the substantial majority of temporary custody orders evades review,

Furthermore, the petitioner claims that there is a strong likelihood that a substantial number of cases involving the application of § 17a-175 to the placement of a child with an out-of-state, noncustodial parent will evade review. In support of this conclusion, the petitioner relies on statistics compiled by the department of children and families' interstate compacts office. These statistics, however, do not support the petitioner's claim that the challenged action here satisfies the first prong of *Loisel.* As noted, the standard is that there must be a "strong likelihood that the inherently limited duration of the action will cause a substantial majority of cases raising the same issue to become *moot* prior to final appellate resolution." (Emphasis added.) *Burbank* v. *Board of Education,* supra, 299 Conn. 840. According to the statistics cited by the petitioner, the receiving state disapproves of the placement of a child with the noncustodial parent almost half of the time that a compact study is requested.[9] In these situations where placement is denied, any order by the court applying § 17a-175 to out-of-state, noncustodial parents will *not* become moot. It is in these situations that an actual controversy will still exist and our appellate courts will be in the position to provide actual relief.[10]

We acknowledge the importance of this issue to out-of-state, noncustodial parents and understand the desire of the parties to obtain a judicial ruling. We

the respondent has foundered on the first required criterion of the exception," and, therefore rejected the respondent's claim that the capable of repetition, yet evading review exception applies to her appeal. Id., 776.

[9] In 2010, for example, there were 109 compact study requests and placement was denied in fifty-one of the cases.

[10] The petitioner argues that the statistics demonstrate that the minimum amount of time that passes before an appeal is ready for oral argument exceeds the time before a decision can be made for placement in over 70 percent of all study requests. We do not quarrel with this assessment, but it is only when these studies result in the receiving state approving of placement that the claim becomes moot before appellate review.

also understand that compact studies can delay the placement of a child with a biological parent. See V. Sankaran, "Out of State and Out of Luck: The Treatment of Non-Custodial Parents Under the Interstate Compact on the Placement of Children," 25 Yale L. & Policy Rev. 63, 74 n.53 (2006) ("State Compact administrators report waiting an average of three to four months for the entire home study to be completed. . . . Others have observed that the [compact] approval process can take 'between six months and one year and at times has exceeded one year'." [Citation omitted.]). We are, however, constrained not to reach out and decide a case when we have concluded we lack subject matter jurisdiction. To do so would be to issue an advisory opinion, which we cannot do.

The respondent's and children's claims do not satisfy the first prong of *Loisel*; they are not entitled to consideration of their appeals under the "capable of repetition, yet evading review" exception. The appeals, therefore, must be dismissed for lack of subject matter jurisdiction.

The appeals are dismissed.

In this opinion BEACH, J., concurred.

BISHOP, J., dissenting. Although I agree with the majority that this case is moot, I disagree with the majority's conclusion that the issues on appeal are not capable of repetition, yet evading review. Accordingly, I would reach the merits of these appeals and, for the reasons set forth herein, reverse the judgments of the trial court.

I

As the majority notes, "to qualify for review under the 'capable of repetition, yet evading review' exception, [the challenged action] must meet three requirements. First, the challenged action, or the effect of the

challenged action, by its very nature must be of a limited duration so that there is a strong likelihood that the substantial majority of cases raising a question about its validity will become moot before appellate litigation can be concluded. Second, there must be a reasonable likelihood that the question presented in the pending case will arise again in the future, and that it will affect either the same complaining party or a reasonably identifiable group for whom that party can be said to act as surrogate. Third, the question must have some public importance. Unless all three requirements are met, the appeal must be dismissed as moot." *Loisel* v. *Rowe*, 233 Conn. 370, 382–83, 660 A.2d 323 (1995). I do not believe that the majority disagrees that these appeals meet the second two requirements. We diverge, however, on the first factor.

At our request, the parties have briefed the issue of mootness, all agreeing not only that the issue in these appeals is moot, but also that it is capable of repetition, yet evading review. The Center for Children's Advocacy, Inc., the National Association of Counsel for Children and the Connecticut commission on child protection also filed a joint amicus brief in which they agree that the issues in these appeals are moot but capable of repetition, yet evading review. Although I agree that the parties' shared desire for a resolution of the issue on appeal cannot create jurisdiction where it does not otherwise exist, I find their reasoning cogent and persuasive. Consequently, like the parties, I believe that this case meets all three requirements for review under the capable of repetition, yet evading review exception.

The majority concludes to the contrary on the basis of its reasoning that an order requiring a compact study pursuant to General Statutes § 17a-175 has an indefinite lifespan. Consequently, the majority believes that these appeals do not satisfy the *Loisel* requirement that the order is of inherently limited duration and, therefore,

likely to escape review. Respectfully, I disagree. As acknowledged by the majority, the petitioner, the commissioner of children and families, has provided statistics in a supplemental brief demonstrating that approximately 73 percent of interstate compact requests are completed prior to oral argument on appeal.[1] This is persuasive evidence that there exists a strong likelihood that a substantial majority of cases regarding interstate compact studies will become moot prior to appellate resolution.[2]

Because the issue raised on appeal affects biological parents, a reasonably identifiable group for whom the appellant herein, the respondent father, can be said to act as a surrogate, and the issue regarding the right of a parent to the care of his minor children is of unquestionable public importance, I believe that this case meets the remaining prongs of *Loisel*. Accordingly, I believe that, although moot, the claim presented in these appeals is capable of repetition, yet evading review.

---

[1] Specifically, the attorney general explained that: "In the 2005 reporting period, there were 50 home study requests by an out-of-state parent; 31 of them being completed before [the amount of time it would take for an average appeal to be ready for oral argument], or 62 [percent]. [In 2006, it was 14 out of 34 home study requests, or 41 percent]. In 2007, the number was 69 out of 88, or 78 [percent]. In 2008, the number was 75 from a total of 95 home study requests, or 79 [percent]. In 2009, [it was] 67 out of 91 home study requests . . . or 74 percent. In 2010 . . . [it was 83 out of 109 home study requests, or 76 percent]. Combining all six years from 2005 to 2010, 339 home study requests out of 467, or [73] percent, would have received a placement decision prior to any appeal being heard for oral argument."

[2] I recognize, as the majority has noted, that this court, in *In re Forrest B.*, 109 Conn. App. 772, 953 A.2d 887 (2008), concluded that the respondent mother failed to offer any evidence showing that "most cases challenging a temporary custody order are, by their very nature, of such a limited duration that there is a strong likelihood that they will become moot before appellate litigation can be concluded." Id., 776. In the case at hand, however, the petitioner has provided statistical evidence regarding interstate compact cases leading me to believe that a substantial majority of these cases are, in fact, likely to evade review.

## II

The respondent and his minor children claim on appeal that § 17a-175 does not apply to out-of-state, noncustodial parents. Specifically, they argue that article III of § 17a-175 is unambiguous and by its plain language excludes out-of-state, noncustodial parents from its reach. I agree and, accordingly, would reverse the judgments of the trial court.[3]

"Our standard of review for issues of statutory interpretation is well settled. Issues of statutory construction raise questions of law, over which we exercise plenary review." (Internal quotation marks omitted.) *Goodspeed Airport, LLC* v. *East Haddam*, 115 Conn. App. 438, 442–43, 973 A.2d 678, cert. granted on other grounds, 294 Conn. 907, 982 A.2d 1082 (2009).

"The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply. . . . In seeking to determine [the] meaning [of a statute], General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) *Dechio* v. *Raymark Industries, Inc.*, 299 Conn. 376, 389–90, 10 A.3d 20 (2010).

The compact initially was codified by General Statutes § 17-81a in 1967; Public Acts 1967, No. 67-178, § 1;

---

[3] Because I agree that § 17a-175 by its own very terms does not apply to out-of-state, noncustodial parents, I would not address the respondent's claim that § 17a-175 violates a parent's federal and state constitutional rights.

and by 1990, every state, the District of Columbia and the Virgin Islands had passed legislation enacting the compact into law. See V. Sankaran, "Out of State and Out of Luck: The Treatment of Non-Custodial Parents Under the Interstate Compact on the Placement of Children," 25 Yale L. & Policy Rev. 63, 68 (2006). Today, § 17a-175 includes ten articles that encompass the compact and provide detailed guidelines for placing minor children out-of-state.

According to article I of § 17a-175, the purpose of the compact is to promote cooperation among the states "in the interstate placement of children to the end that: (a) Each child requiring placement shall receive the maximum opportunity to be placed in a suitable environment and with persons or institutions having appropriate qualifications and facilities to provide a necessary and desirable degree and type of care. (b) The appropriate authorities in a state where a child is to be placed may have full opportunity to ascertain the circumstances of the proposed placement, thereby promoting full compliance with applicable requirements for the protection of the child. (c) The proper authorities of the state from which the placement is made may obtain the most complete information on the basis of which to evaluate a projected placement before it is made. (d) Appropriate jurisdictional arrangements for the care of children will be promoted."

Article III of the statute provides: "No sending state shall send, bring, or cause to be sent or brought into any other party state any child for placement in foster care or as a preliminary to a possible adoption unless the sending agency shall comply with each and every requirement set forth in this article and with the applicable laws of the receiving state governing the placement of children therein." Article VIII provides in relevant part: "This compact shall not apply to . . . [t]he sending or bringing of a child into a receiving state by his

parent, stepparent, grandparent, adult brother or sister, adult uncle or aunt, or his guardian and leaving the child with any such relative or nonagency guardian in the receiving state."

I conclude that § 17a-175 is both plain and unambiguous and that it does not apply to an out-of-state, noncustodial parent. Specifically, article III provides that no sending state shall send any child for placement in *foster care* or as a preliminary to a *possible adoption.* Although the statute does not define "foster care" or "adoption," I conclude that pursuant to their plain meaning, these terms do not include a noncustodial parent. These terms are not susceptible to more than one reasonable interpretation; and equating persons to whom the compact applies with noncustodial parents expands the reach of the statute beyond the breaking point. Consistent with the dictates of § 1-2z, therefore, I will not consider any extratextual evidence of the meaning of the statute. I conclude that the compact does not require a state that is placing children with an out-of-state, noncustodial parent to comply with its provisions.

The petitioner argues that by interpreting article III to exclude out-of-state, noncustodial parents, we would render article VIII meaningless. Moreover, the petitioner claims that article VIII defines the only situations in which the compact does not apply. I do not believe, however, that article VIII provides an exhaustive list of situations in which the compact does not apply. While article VIII specifically lists certain situations pursuant to which the compact does not apply, as noted, article III clearly establishes, as a precondition, that the placement of children in foster care, or as a preliminary to a possible adoption, is contemplated.

My interpretation of § 17a-175 is not at odds with article VIII. Both articles III and VIII of the compact

"[evince] the intent of the drafters to respect the integrity of the family and to allow parents to plan for the care of their own children unless the children were being placed in foster care or were being adopted." V. Sankaran, supra, 25 Yale L. & Policy Rev. 70–71. My conclusion is consistent with this intent. Here, the respondent is seeking to care for his own children, in his home state, and is not seeking to adopt them or place them in foster care. I do not believe that the drafters intended to burden parents with the same requirements as those individuals or agencies who are seeking to adopt children or provide foster care to children to whom they are not related.

The petitioner further argues that our construction of § 17a-175 contradicts the compact's regulations. By way of background, the Association of Administrators of the Interstate Compact on the Placement of Children drafted model regulations for states to adopt as a supplement to the compact. Id., 71–72. Specifically, Regulation No. 3 (6) (b) provides: "The Compact does not apply whenever a court transfers the child to a non-custodial parent with respect to whom the court does not have evidence before it that such parent is unfit, does not seek such evidence, and does not retain jurisdiction over the child after the court transfers the child." Subsection (5) of this regulation also provides: "The term 'foster care' as used in Article III . . . means care of a child on a 24-hour a day basis away from the home of the child's parent(s). Such care may be by a relative of the child . . . ." Finally, subsection (1) provides: " 'Placement' as defined in Article II (d)[4] includes the

---

[4] Article II (d) of General Statutes § 17a-175 provides: " 'Placement' means the arrangement for the care of a child in a family free or boarding home or in a child-caring agency or institution but does not include any institution caring for the mentally ill, mentally defective or epileptic or any institution primarily educational in character, and any hospital or other medical facility."

arrangement for the care of a child in the home of his parent . . . ."

The petitioner argues that pursuant to these regulations, § 17a-175 must apply to out-of-state, noncustodial parents. I conclude that the petitioner's interpretation of Regulation No. 3 is in direct conflict with § 17a-175 and, as such, the statute must control. Specifically, the petitioner's reading of the regulation expands article III to include situations that were not originally included when the compact was adopted by our legislature. This is the judicial equivalent of permitting the tail to wag the dog. "A regulation cannot be upheld if it is contrary to the statute under which it was promulgated." (Internal quotation marks omitted.) *McComb* v. *Wambaugh*, 934 F.2d 474, 481 (3d Cir. 1991). The regulation provides no basis upon which to elongate the language of § 17a-175 to apply to parents in the respondent's situation.

The petitioner argues that our decision will place children at risk of harm because the compact provides the most thorough investigation possible of the proposed placement by the receiving state. I understand, and share, the petitioner's desire to assure the highest level of safety for children who are placed with an out-of-state, noncustodial parent. Expanding the meaning of § 17a-175, however, to include situations clearly not within the reach of the statute, to the detriment of noncustodial parents, is not the proper way, or the only way, to protect children who are being placed out of state. Our role as an appellate court, moreover, is not to provide alternatives to a compact study. Our role in this case simply is to determine whether the compact applies to out-of-state, noncustodial parents. I have concluded that it does not. I have confidence that the responsible authorities will be able to devise alternative approaches that safeguard children placed with noncustodial parents in other states.[5]

---

[5] In an article, "Out of State and Out of Luck: The Treatment of Non-Custodial Parents Under the Interstate Compact on the Placement of Chil-

744

In reaching this decision, I join at least five other
state courts,[6] and the only federal court to address the
issue of whether the compact applies to out-of-state,
noncustodial parents. In *McComb* v. *Wambaugh*, supra,
934 F.2d 474, the United States Court of Appeals for
the Third Circuit concluded that, in determining
whether the compact applied to an out-of-state, noncus-
todial parent, "[t]he most significant and, to our minds,
determinative language is found in Article III (a) . . . ."
Id., 480. The court concluded that, "[t]he scope of the
Compact *is carefully limited to foster care or disposi-
tions preliminary to an adoption.* Article III thus pre-
cisely reflects the articulated intention of the Council
of State Governments." (Emphasis added.) Id.

dren," Vivek Sankaran discusses the use of custody hearings as a substitute
for the compact when out-of-state, noncustodial parents are seeking custody
of their children. The author stated that "[c]hild welfare agencies routinely
contract with licensed private foster care groups . . . to assess potential
placements, license foster parents, and monitor children in homes. Courts
and states could make greater use of such arrangements to help ensure that
home studies of biological parents are completed in a more timely manner.
The result of this home study could be admitted into evidence at the custody
hearing at which a judge, not a caseworker, would have the final authority
to approve or deny the placement. . . . Courts could [also] maintain the
current [compact] framework but modify its application when the interests
of biological parents are implicated. For example, if an out-of-state parent
requests placement of his child, the receiving state could continue to bear
responsibility for conducting the home study and making an initial recom-
mendation about the parent's suitability. But under this modified approach,
the home study would have to be conducted on an expedited basis, and the
court, either in the sending or receiving state, would possess the exclusive
authority to make the ultimate placement decision after a hearing at which
the parent could be heard." V. Sankaran, supra, 25 Yale L. & Policy Rev.
88–89. Again, while I will not opine as to the appropriate replacement for
the compact, I believe alternative approaches exist, and can be devised, to
assure the safety of children placed with out-of-state, noncustodial parents.

[6] Other state cases that have found that the compact does not apply to out-
of-state, noncustodial parents include *Arkansas Dept. of Human Services* v.
*Huff*, 347 Ark. 553, 65 S.W.3d 880 (2002); *Tara S.* v. *Superior Court*, 13 Cal.
App. 4th 1834, 17 Cal. Rptr. 2d 315 (1993); *In re Alexis O.*, 157 N.H. 781,
959 A.2d 176 (2008); *In re Mary L.*, 108 N.M. 702, 778 P.2d 449 (App.), cert.
denied, 108 N.M. 713, 778 P.2d 911 (1989); *In re Rholetter*, 162 N.C. App.
653, 592 S.E.2d 237 (2004).

In addressing article VIII, the *McComb* court concluded that it "excludes from the scope of the Compact the sending of a child into a receiving state by certain relatives (including a parent) or his guardian and leaving the child with any such relative [including a parent]. The word guardian is not defined in the statute. Presumably if an agency has been appointed guardian, it can place a child in another state with a parent or other relative designated in the Compact without being affected by its terms.

"The detailed draftsman's notes, supplied by the Council of State Governments, reinforce the notion that the Compact does not apply to parental placements. The notes state that Article VIII exempts certain close relatives. This was done in order to protect the social and legal rights of the family and because it is recognized that regulation is desirable only in the absence of adequate family control or in order to forestall conditions which might produce an absence of such control." (Internal quotation marks omitted.) Id., 480–81.

Finally, the Court of Appeals noted that "[w]e are persuaded that read as a whole the Compact was intended only to govern placing children in substitute arrangements for parental care. Thus, the Compact does not apply when a child is returned by the sending state to a natural parent residing in another state. The language of Article III is unambiguous . . . ."[7] Id., 482. I agree with the court's interpretation of article III and join those jurisdictions that have held that the compact applies to children being placed in substitute arrangements for parental care, and does not apply to out-of-state, noncustodial parents.

On the basis of the foregoing, I would reverse the judgments of the trial court and remand the case with

[7] Unconstrained by § 1-2z, or any analogous federal statute, the court also examined extratextual evidence in arriving at its conclusion.

direction to render judgments for the respondent and the children. Accordingly, I respectfully dissent.