J-S01036-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JOSE ANGEL SEMIDEY | : | |
| | : | |
| Appellant | : | No. 1051 MDA 2020 |

Appeal from the PCRA Order Entered July 21, 2020
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0000698-1998

BEFORE:   LAZARUS, J., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                **FILED MARCH 22, 2021**

Appellant, Jose Angel Semidey, appeals from the order entered in the Court of Common Pleas of York County dismissing his "Petition to Enforce Plea Agreement" as an untimely petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546.  He asserts that his petition did not fall within the ambit of the PCRA because it relied on contract principles to contest the retroactive imposition of SORNA II,[1] Subsection I heightened registration requirements to his case.  He asks this Court to vacate the lower court's order and remand the matter for an evidentiary hearing where he may

---

[*] Former Justice specially assigned to the Superior Court.

[1] "Sex Offender Registration and Notification Act," 42 Pa.C.S. § 9799.10 et seq.

present evidence that his original 10-year registration period prescribed under Megan's Law I [2] was a term of his negotiated plea that requires enforcement. After careful review, we vacate and remand with instructions.

On June 11, 1997, 22 year-old Appellant was charged with Involuntary Deviate Sexual Intercourse-Forcible Compulsion, 18 Pa.C.S. § 3123(a)(1), Involuntary Deviate Sexual Intercourse-Person less than 16 years of age, 18 Pa.C.S. § 3123(a)(7), and Corruption of Minors, 18 Pa.C.S. § 6301(a) for his involvement with a 15 year-old girl. Because the alleged victim shortly thereafter retracted her claim that Appellant used force during the alleged episode, the IDSI-forcible compulsion charge was dropped.

Appellant and the Commonwealth eventually entered into plea negotiations and reached an agreement whereby Appellant would plead guilty to both remaining charges in exchange for a two to five year sentence. Specifically, Appellant's written plea colloquy, at paragraph "30", indicates the "agreement" calls for Appellant to serve a "2-5" year sentence. Written Plea Colloquy, 4/22/98, at ¶ 30. Paragraph 34 of the written plea states that no other promises were made except for that specified in Paragraph 30. *Id.* at ¶ 34. Nowhere in the written colloquy are Appellant's registration requirements mentioned.

---

[2] 18 Pa.C.S. 9795.1 (repealed).

Appellant pleaded guilty on April 22, 1998.[3]  The sexual offender registration law then in effect was first iteration of Pennsylvania's Megan's Law, which required offenders convicted of IDSI—Person less than 16 years of age to register for a period of 10 years pursuant to 42 Pa.C.S. § 9793.[4]

On August 10, 1998, the trial court conducted Appellant's sentencing hearing.  After discussing Appellant's status as a non-SVP Megan's Law offender, the court announced that it was sentencing Appellant to two to five years' incarceration "consistent with the plea agreement."  8/10/98, at 7.

Appellant was asked to read the sexual offender notification that he had signed, after which the prosecutor summarized the contents, stating, "You realize that the registration period is for 10 years, and that does not involve any community notification."  N.T. at 8.  Receiving no reply from Appellant,

---

[3] The notes of testimony from Appellant's guilty plea hearing are not included in the certified record.  In response to our request for the notes of testimony, the common pleas court informed us that no transcription of the hearing exists.  We also note that the record has not been amended with a Pa.R.A.P. 1923 "statement in absence of a transcript" alluding to any statement made during Appellant's guilty plea hearing that identified his registration period as a product of negotiations.

For reasons made apparent *infra*, we determine that the lack of either a transcript or a statement in its absence does not impair our ability to resolve the matter before us, as the remainder of the record enables full understanding of all relevant circumstances surrounding Appellant's plea and consequential registration period.

[4] Section 9793 was repealed effective July 9, 2000 and subsequently amended effective February 18, 2001 as 42 Pa.C.S. § 9795.1, pursuant to Megan's Law II.

the prosecutor requested that a copy of the hearing be made and transmitted to the Pennsylvania State Police, Megan's Law Division. N.T. at 9. At no time did either the prosecutor or Appellant indicate that the term of registration was affected by plea negotiations.

Appellant completed a five-year prison sentence and commenced his 10-year registration period on August 14, 2003. On December 3, 2012, with only eight months left to his registration, the Pennsylvania State Police notified him that under newly enacted Act 11 of 2011 and Act 91 of 2012, known as SORNA I, he was a Tier III violator subject to lifetime registration. Appellant did not challenge his new categorization or its attendant registration requirements. Subsequently, in 2018, Appellant was notified that he remained a lifetime registrant under Act 10 of 2018 HB 631, known as SORNA II, Subsection I.[5]

─────────────────────────────

[5] The Supreme Court of Pennsylvania in **Commonwealth v. Muniz**, 640 Pa. 699, 164 A.3d 1189 (Pa. 2016) determined that SORNA I registration requirements were punitive and may not be applied retroactively without violating *ex post facto* laws. In 2018, The Pennsylvania General Assembly responded to the constitutional concerns addressed in **Muniz** by enacting SORNA II, which, *inter alia*, comprised new registration requirements in Subsection H (for registrations commencing, or criminal acts committed, between 2012 and present) and Subsection I (for registrations commencing, or criminal acts committed, between 1996 and 2012). This Court has summarized the iterations of SORNA, as follows:

> SORNA was originally enacted on December 20, 2011, effective December 20, 2012. **See** Act of Dec. 20, 2011, P.L. 446, No. 111, § 12, effective in one year or Dec. 20, 2012 (Act 11 of 2011). Act 11 was amended on July 5, 2012, also effective December 20, 2012, **see** Act of July 5, 2012, P.L. 880, No. 91, effective Dec. 20, 2012 (Act 91

On December 23, 2019, Appellant filed with the lower court a counseled petition seeking relief from SORNA II's lifetime registration requirement either through specific enforcement of the terms of his plea agreement—which he maintained included a 10-year registration period—or, in the alternative, on *ex post facto* grounds by asserting that the registration requirements of SORNA II, Subsection I were punitive in effect and, thus, could not be imposed retroactively. Upon review of Appellant's petition, the lower court deemed it an untimely PCRA petition and dismissed it in its entirety. This timely appeal follows.

Appellant raises the following issues for our consideration:

1. Did the court err when it categorized Appellant's petition to enforce his plea agreement as a Post Conviction Relief Act

---

of 2012), and amended on February 21, 2018, effective immediately, known as Act 10 of 2018, *see* Act of Feb. 21, 2018, P.L. 27, No. 10, §§ 1-20, effective Feb. 21, 2018 (Act 10 of 2018), and, lastly, reenacted and amended on June 12, 2018, P.L. 140, No. 29, §§ 1-23, effective June 12, 2018 (Act 29 of 2018). Acts 10 and 29 of 2018 are generally referred to collectively as SORNA II. Through Act 10, as amended in Act 29 (collectively, SORNA II), the General Assembly split SORNA I's former Subchapter H into a Revised Subchapter H and Subchapter I. Subchapter I addresses sexual offenders who committed an offense on or after April 22, 1996, but before December 20, 2012. *See* 42 Pa.C.S.A. §§ 9799.51-9799.75. Subchapter I contains less stringent reporting requirements than Revised Subchapter H, which applies to offenders who committed an offense on or after December 20, 2012. *See* 42 Pa.C.S.A. §§ 9799.10-9799.42.

***Commonwealth v. Reslink***, --- A.3d ----, 2020 PA Super 289 (Dec. 18, 2020)

Motion and thereby deemed that it did not have jurisdiction to rule on said petition?

2. Did the court fail to follow case precedent when it failed to enforce Appellant's plea agreement with the Commonwealth of Pennsylvania thereby abusing its discretion contrary to Pennsylvania law?

Appellant's brief, at 8.

Appellant's first issue addresses the lower court's decision to construe his petition challenging the requirement that he register for life under SORNA II as a PCRA petition. Because his petition contained a discrete contract claim seeking enforcement of the terms of his negotiated plea, Appellant posits, it fell outside the ambit of the PCRA and required merits review. We agree.

Decisional law of this Commonwealth has clarified that a petition seeking enforcement of negotiated plea terms need not be filed under the PCRA:

A petition for collateral relief will generally be considered a PCRA petition if it raises issues cognizable under the PCRA. **See Commonwealth v. Peterkin**, 554 Pa. 547, 533, 722 A.2d 638, 640 (Pa. 1998); 42 Pa.C.S.A. § 9542 (stating PCRA shall be sole means of obtaining collateral relief and encompasses all other common law and statutory remedies for same purpose). The plain language of the PCRA mandates that claims which could be brought under the PCRA, must be brought under the PCRA.

. . .

On the other hand, a collateral petition to enforce a plea agreement is regularly treated as outside the ambit of the PCRA and under the contractual enforcement theory of specific performance. **See, e.g., Commonwealth v. Martinez**, 637 Pa. 208, 147 A.3d 517 (2016) **Commonwealth v. Fernandez**, 195 A.3d 299 (Pa.Super. 2018) (*en banc*); **Commonwealth v. Hainesworth**, 82 A.3d 444 (Pa.Super. 2013) (*en banc*), *appeal denied*, 626 Pa. 683, 95 A.3d 276 (2014); **Commonwealth v. Farabaugh**, 136 A.3d 995 (Pa.Super. 2016), *appeal denied*, 643 Pa. 140, 172 A.3d 1115 (2017); **Commonwealth v. Nase**, 104

- 6 -

A.3d 528 (Pa.Super. 2014), *appeal denied*, 640 Pa. 389, 163 A.3d 405 (2016). . . . The designation of the petition "does not preclude a court from deducing the proper nature of a pleading." **See Commonwealth v. Porter**, 613 Pa. 510, 524, 35 A.3d 4, 12 (2012) (citing **Commonwealth v. Abdul–Salaam**, 606 Pa. 214, 996 A.2d 482 (2010) (involving deceptive labeling of PCRA pleading)).

**Commonwealth v. Kerns**, 220 A.3d 607, 611-12 (Pa. Super. 2019).

More recently, in the consolidated appeal **Commonwealth v. Lacombe**, ---A.3d---- (Pa. filed June 20, 2020), the Pennsylvania Supreme Court reaffirmed this jurisprudence by "declin[ing] to find that the PCRA, or any other procedural mechanism, is the exclusive method for challenging sexual offender registration statutes[.]" **Id**. at *6. Also notable for our purposes in the case *sub judice* is that the procedural history for appellant Claude Lacombe mirrors that of Appellant herein.

In 1997, Lacombe was convicted of IDSI and lesser offenses, subjecting him to a prescribed 10-year registration under Megan's Law I. He was released from prison in 2005 and his registration period would have ended in 2015 but for the intervening enactment of SORNA I, which reclassified IDSI as a Tier III offense requiring lifetime registration.

Like Appellant, Lacombe did not challenge the changes to his registration until 2018, when SORNA II, Subsection I had already taken effect. The Commonwealth contended that Lacombe's filing was an untimely PCRA petition, but the lower court viewed it as raising an issue outside the aegis of the PCRA. Therefore, the court conducted merits review and deemed the

registration requirements of Subsection I punitive in effect so as to constitute an *ex post facto* violation.

Pursuant to Pa.C.S. § 722(7),[6] the Commonwealth appealed directly to the Pennsylvania Supreme Court, which granted review. On the threshold jurisdictional question of whether review of Lacombe's challenge should have been confined to the PCRA, the court noted that it has "consistently decided cases regarding sexual offender registration statutes that were challenged via different types of filings." **Id.** at 617 (listing "petition to enforce plea agreement" as one of the qualifying types). The Court expounded:

> Our approach in this regard takes into account the fact that frequent changes to sexual offender registration statutes, along with more onerous requirements and retroactive application, complicate registrants' ability to challenge new requirements imposed years after their sentences become final.
>
> This is especially so under the PCRA as many registrants, Lacombe included, would be ineligible for relief on timeliness grounds. **See** 42 Pa.C.S. § 9545(b)(1) (PCRA petition must be filed within one year of judgment of sentence becoming final unless exception applies). Other registrants may be ineligible because their sentence has expired while their registration requirements

---

[6] Section 722(7) provides, in relevant part:

> The Supreme Court shall have exclusive jurisdiction of appeals from final orders ... [in m]atters where the court of common pleas has held invalid as repugnant to the Constitution, treaties or laws of the United States, or to the Constitution of this Commonwealth, any treaty or law of the United States or any provision of the Constitution of, or of any statute of, this Commonwealth, or any provision of any home rule charter.

42 Pa.C.S. § 722(7).

continue. *See* 42 Pa.C.S. § 9543(a)(1) (PCRA petitioner must be serving sentence to be eligible for relief). Both situations arise from the fact that the registration period does not begin until registrants are released from prison, which may be well after their sentence has become final or may signal the completion of their sentence.

*Id*., 234 A.3d at 617–18.

Accordingly, the Pennsylvania Supreme Court rejected the Commonwealth's jurisdictional challenge, finding the lower court appropriately conducted merits review of Lacombe's petition outside the auspices of the PCRA.[7] For reasons expressed in both *Lacombe* and other precedent discussed *supra*, we find the lower court erred in dismissing as an untimely PCRA petition Appellant's petition to enforce the terms of his plea agreement.

In Appellant's remaining issue, he argues that retroactive imposition of SORNA II, Subsection I, lifetime registration requirements for his offense denies him of the benefit of the bargain struck in his negotiated guilty plea. To this end, he claims a 10-year registration requirement was a "term" of his plea negotiations that required continued observance by both the Commonwealth and the court which accepted it, regardless of revised requirements of successor sexual offender registration laws. As Appellant raised this issue before the lower court, we may address it presently.

The law on the enforcement of agreements is well established. "Although a plea agreement occurs in a criminal

_____

[7] The Supreme Court went on to hold that the reduced registration requirements of SORNA II, Subsection I were constitutional, vacated the lower court's order, and reinstated Lacombe's lifetime registration under Subsection I. *Id.*, 234 A.3d at 618-627.

context, it remains contractual in nature and is to be analyzed under contract-law standards." [ ]*Farabaugh*, 136 A.3d [at] 1001 [ ] (citation omitted). "In determining whether a particular plea agreement has been breached, we look to what the parties to this plea agreement reasonably understood to be the terms of the agreement." *Hainesworth*, 82 A.3d 447 (citation and internal quotation marks omitted). When the Commonwealth's promise or agreement provides consideration for the defendant's acceptance of the plea, the Commonwealth must fulfill that promise

*Fernandez*, 195 A.3d at 308.

Controlling precedent recognizes that petitioners may avoid retroactive application of new legislation imposing heightened sex offender registration requirements by demonstrating their registration terms were the product of plea agreement negotiations. Specifically, such a demonstration may be made by reference to either a guilty plea made in exchange for an agreement to *nolle prosse* or withdraw charges which, if proven at trial, would have resulted in greater registration requirements, or to a specific acknowledgement made at the guilty plea or sentencing hearing confirming that the registration period was a negotiated term. *See Farabaugh* (finding registration avoidance a term of negotiations where Commonwealth *nolle prossed* felony, which would have required registration, in exchange for plea to non-reportable charge); *Martinez* (consideration established by offenders' respective agreements to plead guilty to lesser charges carrying reduced or no registration requirement in exchange for either *nolle prosse* or withdrawal of most serious offense carrying greater registration requirements); *Hainesworth* (affirming order granting claim of specific performance of plea

agreement and invalidating retroactive application of SORNA registration requirements where, pursuant to agreement, Commonwealth dropped sole charge requiring registration in exchange for Appellant's guilty plea to remaining charges); and ***Commonwealth v. Ritz***, 153 A.3d 336, 339 (Pa. Super. 2016) (affirming order granting motion to enforce plea agreement; though record lacked explicit reference to registration as term of negotiation, offender pleaded guilty to one charge requiring 10-year registration in exchange for agreement to *nolle prosse* remaining charges, which, if collectively proven at trial, would have subjected offender to lifetime registration).

In the case *sub judice*, however, Appellant makes no such demonstration. At the time his plea negotiations commenced, Appellant faced one count of IDSI-Person less than 16 years of age, which carried a 10-year period of registration under Megan's Law I, and one count of Corruption of Minors, which carried no registration requirement.

Appellant pleaded guilty to both charges in exchange for the promise of a reduced sentence of two to five years' incarceration. In this regard, the written guilty plea identifies the reduced sentence as the sole negotiated term of the plea. Furthermore, there was neither the bargaining away of a more serious offense nor the avoidance of trial and a guilty verdict on multiple counts that would have subjected Appellant to a lengthier registration period.

Therefore, we conclude that Appellant's registration period was not a negotiated term of his plea bargain. In reaching this conclusion, we

distinguish the present case from those discussed *supra*, as the record evinces neither an express acknowledgment that registration was a negotiated term nor the restructuring of charges and consequential reduction of registration requirements that would allow for such an inference.

It is well-settled that defendants are entitled to the "benefit of their bargain" in plea negotiations, but the benefit negotiated and obtained here pertained only to the duration of Appellant's sentence. Whether Appellant had pleaded guilty to, or suffered a guilty verdict on, the charges he faced, a prescribed 10-year registration period would have resulted. Accordingly, we affirm the order denying relief on Appellant's petition to enforce the terms of his plea agreement, albeit on different grounds.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/22/2021